No. 45,536

STATE OF KANSAS, *Appellee,* v. JAMES L. ALDRIDGE, *Appellant.*

(464 P. 2d 8)

Opinion filed January 24, 1970.

*Joseph Anderson,* of Mission, argued the cause and was on the brief for appellant.

*R. Michael Latimer,* County Attorney, argued the cause and *Kent Frizzell,* Attorney General, was with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: The appellant, James L. Aldridge, was convicted by a jury and sentenced for second degree burglary (K. S. A. 21-520) and larceny in connection therewith (K. S. A. 21-524) as an habitual criminal (K. S. A. 21-107a). On direct appeal he now seeks to have the sentence set aside because of alleged trial errors.

All errors specified on appeal relate to the admission of evidence and may be compressed into two categories, those which relate to the pre-trial identification and those which relate to the cross-examination of the appellant. Although appellant does not contend his conviction was based upon insufficient evidence a summary of the evidence is necessary to understand the questions presented.

The Huffman Grocery Store in Lane, Kansas, was burglarized the evening of April 5, 1968. The town of Lane is located in a rural community with a population of 300. Mr. Huffman closed and locked his store at 6:00 o'clock p. m., his usual closing time. At 9:00 p. m. Mr. Willey, a local townsman, was walking past the Huffman store building when he heard something fall inside the building. The inside of the building was illuminated by a light burning in the store and by a street light close to the front of the building. Mr. Willey looked inside and saw a stranger standing beside a bread display rack. He continued to watch this man as

he walked along in front of the Huffman store. As Mr. Willey approached the far corner of the building the stranger noticed him and fell to the floor. Mr. Willey ran and notified the Huffman family. They called the sheriff and notified him there was a burglary in progress. In response to the sheriff's radio communications law enforcement officers from all four surrounding counties converged on the town of Lane.

As one of the officers approached the town he came upon a pickup truck travelling north and bearing a Missouri license. It was going away from the town of Lane. The officer stopped the truck at 9:15 p. m. two and a half miles north of the town. Marvin G. Brown was riding in the truck which was owned and driven by the appellant. Shortly thereafter other law enforcement officers arrived. The appellant and Brown were given the full "Miranda" warning of their constitutional rights and they were searched. Small coins totalling $9.55 were taken from the pockets of the appellant. The appellant's companion had $16.85 in small coins on his person. Three packages of "Rolaids" were removed from the glove compartment of the truck.

One of the officers who had been making an investigation of the burglary at the Huffman Grocery Store brought Mr. Willey to where the suspects were being held in the country. Mr. Willey there identified Marvin G. Brown as the man he had surprised in the grocery store one hour earlier.

A further investigation revealed that the store had been entered by prying open a back window. Fourteen boxes of groceries had been removed from the grocery shelves. Ten boxes were found by the back door which led into the alley. Four boxes were found in the alley near a gas meter. A coin operated "pop" machine was broken open and coins were missing. A carton of "Rolaids" in the store had been opened and some of the packages had been removed. Footprints were discovered in the alley. They led through an area of tall grass, down a railroad right-of-way and to a field driveway. Two distinct paths were visible in the tall grass which was wet from a heavy dew. Pickup tire tracks were apparent in the mud of the driveway where the footprints ended. Plaster casts of these tire tracks matched the tread on the tires of appellant's truck. The packages of "Rolaids" taken from appellant's truck bore special identification similar to those which remained in the broken carton in the Huffman store.

During the trial counsel for appellant strenuously objected to evidence of the pre-trial identification of Marvin G. Brown which tended to link the appellant to the burglary by association. Appellant specifies it was error to permit Mr. Willey to testify that he identified Marvin G. Brown as the stranger he observed in the Huffman store the night of the burglary. His testimony at the trial was that he identified Brown with the burglary when he saw the appellant and Brown in handcuffs standing beside the pickup along the highway north of Lane, Kansas.

Appellant contends this pre-trial identification constituted an illegal "line-up" in violation of his constitutional rights as set forth in *United States v. Wade*, 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert v. California*, 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 and *State v. Sanders*, 202 Kan. 551, 451 P. 2d 148.

We believe the appellant misconstrues and misapplies what was said in *Wade*, *Gilbert* and *Sanders*. The constitutional rights sought to be protected in *Wade* and *Gilbert* were not violated in the present case.

In *Wade* and *Gilbert* the high court was concerned with the accused's rights to counsel under the Sixth Amendment. In each of those cases the accused was under indictment for a crime and was represented by counsel. The accused in each of those cases was required to participate in a stationhouse lineup without notice to his counsel. At trials which followed in-court identification of the defendants was made by the witnesses. The records on appeal did not disclose the manner or the source of information used by the witnesses to make the identifications.

The cases cited are readily distinguishable from the present case. Appellant was not required to appear in a stationhouse lineup. He was not the person identified by the witness prior to trial and he was not identified in court by the witness. Appellant was not represented by counsel when the pre-trial identification of Brown occurred. Both were advised of their rights to counsel under the Miranda guidelines. Neither of them requested that counsel be present. Circumstances dictated that they be confronted by the witness as quickly as possible. If they were innocent of the crime they could expect an immediate vindication by this witness and they would be sent on their way.

Counsel for appellant further attacks the circumstances under which the pre-trial identification was made independently of the

"right to counsel" claim in *Wade* and *Gilbert*. He objects to his indirect identification with the crime, which followed when he was found in the company of Marvin G. Brown fifteen or twenty minutes after the crime was committed. We find nothing in the record to indicate the method and manner of Brown's identification were unduly suggestive. Under the totality of the circumstances of this case the confrontation with the lone eyewitness was rationally conducted by the law enforcement officers. It was arranged within an hour after the witness had viewed the burglar. The appellant and Brown if innocent of the crime were as vitally interested in obtaining a confrontation with the witness as were the police. There was nothing required of the appellant or Brown which was suggestive or conducive to causing the witness to mistake the identity of the man he watched in the Huffman store. The presence of counsel at this time and place would not have assisted counsel in the fact-finding process at trial.

Evidence of the identification of an associate and the presence of that associate at the place of the burglary is relevant evidence. (*State v. Hoerr*, 88 Kan. 573, 129 Pac. 153.)

Appellant testified that Marvin G. Brown was riding in his pickup truck when he was stopped by the officers. He further testified that Brown was a hitchhiker to whom he had given a lift. The verdict indicated the jury did not accept this explanation of their acquaintanceship. We find no error in the pre-trial identification of Brown or in the testimony connecting appellant with the crime.

One final contention by appellant should be mentioned. It relates to the extent of the cross-examination of the appellant.

Appellant testified he left Kansas City at 4:00 p. m., drove to the "Country Inn" in Topeka, at 8:00 p. m., he left Topeka and headed for Osawatomie by way of Lawrence. He wanted to see his mother. He took a wrong road south of Rantoul. He picked up the hitchhiker, Brown, and was retracing his route north toward the "John Brown Highway" when he was arrested by the officers. Brown was a stranger to him.

On cross-examination appellant testified over the objection of his counsel that at the time he was arrested his shoes were wet but his trousers were not wet. On rebuttal for the state an arresting officer testified that the appellant's shoes and trousers were wet up to his knees at the time of his arrest.

In view of prior evidence introduced by the state concerning the heavy dew and the footprints in the tall grass, the question was relevant. This evidence was proper since appellant's testimony placed him in his pickup from 4:00 p. m. until his arrest, except for his visit to the "Country Inn" in Topeka.

When the defendant in a criminal case takes the stand as a witness his integrity as a witness is subject to scrutiny and he cannot complain because he is subjected to the same inquiries and tests as other witnesses. (*State v. Jackson,* 201 Kan. 795, 443 P. 2d 279; *State v. Schroeder,* 201 Kan. 811, 820, 443 P. 2d 284.)

Generally speaking, the extent to which cross-examination of a witness may be allowed rests largely in the judicial discretion of the trial judge and his ruling will not be disturbed unless an abuse of discretion is made to appear. (*State v. Pierson,* 202 Kan. 297, 302, 448 P. 2d 30.)

There is nothing to indicate the trial judge abused his discretion in this case and the appellant's contentions cannot be sustained. The judgment and sentence are affirmed.