471 P.2d 873

The STATE of Utah, Plaintiff and
Respondent,

v.

Kenneth Woodrow SPENCER, Defendant
and Appellant.

No. 11980.

Supreme Court of Utah.

July 7, 1970.

Thomas A. Quinn, Salt Lake City, for
defendant and appellant.

Vernon B. Romney, Atty. Gen., Lauren
N. Beasley, Joseph P. McCarthy, Asst. Atty.
Gens., Salt Lake City, for plaintiff and
respondent.

ELLETT, Justice:

The defendant appeals from a convic-
tion by a jury of the crime of robbery. He
makes three assignments of error, none of
which was raised in the court below. Those
assignments are (1) the defendant was
identified out of court before he had
counsel; (2) the circumstances under
which the out-of-court identification took
place were suggestive and unfair; and (3)
one of defendant's witnesses was required

to testify without being permitted to explain to the jury why he refused to testify when first called.

We will discuss points (1) and (2) together first and then consider point (3).

The pertinent facts are these:

At approximately nine p. m. a man entered a service station and indicated a desire to purchase some tires. The attendant was a 19-year-old boy, who quoted prices on the available tires. After some discussion, the man said he was interested but the price was more than he wanted to pay. He then requested change for a quarter so that he could purchase a candy bar from a vending machine. When the attendant unlocked the cash drawer, the man drew a Luger-type pistol and said, "Okay. Do you want to open up and give it all to me?" The attendant stared at the man, who admonished him not to look at him. A check of the cash drawer showed a shortage of $99.15.

The attendant called the police within a few minutes and gave a description of the robber, his clothing, and the automobile in which he fled from the scene.

The response of the police was prompt, and in about 35 minutes after receiving the call one officer saw a car which seemed to fit the description of the robber's automobile emerge from a side street four or five blocks from the scene of the crime. The car was stopped, and in it were the defendant, his uncle, and a person of Mexican extraction. The defendant would not accompany the officer to the service station in question, and so another officer brought the victim to the place where the defendant's car was being detained. Before bringing the victim to see if one of the three detained men was the robber, the police showed him some pictures, including an old one of the defendant, but the victim could not identify the picture as being that of the robber. However, upon arriving at the place of detention, the victim promptly identified the defendant as being the perpetrator of the crime.

The defendant's car was searched with his permission, and the officers found approximately $30 cash hidden under the dashboard of the car. They also found an empty gun box for a .22 caliber Colt pistol and two .22 caliber cartridges. The victim said that the picture of the pistol on the empty box resembled the gun aimed at his head by the robber.

The officers went to the home of the defendant's grandmother, which was very near to the place where the defendant's car was when it was first seen by the officer, and with her permission examined the house. They saw a turtle-neck sweater like the one the victim said the robber had worn on the floor at the foot of a bed.

The defendant makes some kind of an argument to the effect that the police should not have shown the old picture to

the victim; that by doing so, they in some manner poisoned the mind of the victim, so that he should not be permitted to recognize the defendant as the robber when he was brought face to face with him. Defendant also claims that it would be a violation of his constitutional rights to have the victim recognize him as being the robber unless his lawyer was present.

This is a most inane argument, although the defendant claims to base his contentions upon some cases decided by the Supreme Court of the United States. He says those cases hold that an improper line-up is so likely to affect the subconscious mind of one who views it that when that person later says positively that he recognizes the defendant, the testimony cannot stand and the defendant must be freed of any charges which depend upon an identification.

 This specious argument completely ignores the functions of jurors, who weigh testimony and give such effect to it as under all the circumstances they deem proper. Whether the witness really recognizes a defendant in court as being a robber is, of course, a matter for the jury to decide. A witness may be mistaken or he may be lying, but no court ought to decide that as a matter of law. In this case it was the defendant himself who arranged the "line-up" consisting of himself, his uncle, and the Mexican, wherein he was identified as the robber. The State had nothing to do with it. A serious crime had just been commit-

ted. Three men were being detained, and it was good police procedure to ascertain as quickly as possible their identity so as to release them if they were innocent and to hold them in custody if they were the culprits. There was not time for a lawyer to be present, and we are unable to see what purpose would be served by having an attorney present merely to watch the victim look at the defendant.

If those cases relied upon by the defendant hold as he claims they do, and were decided under facts similar to those of this case, they are not based upon either reason or common sense and should not be followed. If there were any question in this case of a violation of defendant's rights under the Federal Constitution, we would be the first to see that those rights were protected. If there be any such violation in this case, it is the violation of a right which did not exist at the time the Constitution was adopted or for more than a century and a half thereafter, during which time the document was interpreted by those great justices who were instrumental in promulgating it and urging its adoption originally as well as by those learned men who helped frame and interpret the various amendments thereto.

It has been said that the Constitution of the United States was framed by men inspired by the Almighty Creator. If that be true, then the cases cited by the defendant, if valid, would seem to make it appear that

the framers did not correctly understand their inspiration. Those cases also make manifest the fact that some 75 of the greatest justices of the Supreme Court never did know what the language of the Constitution meant. It would, therefore, seem that only God knew the true meaning, and He kept it to Himself for 175 years to reveal at long last to certain justices some strange and theretofore undreamed of meanings of the Constitution, all to the advantage and great joy of malefactors and to the utter horror and consternation of the great bulk of the law-abiding citizenery of the land.

As to the reluctant witness, he was the defendant's stepfather, and he testified fully regarding all relevant matters in the case. He refused to testify when first called to the witness stand until he had talked privately to the judge and to defense counsel. A recess was taken. He did talk to the judge and counsel out of the presence of the jury. When court resumed, the witness wanted to tell the jury what he had told the judge. No record was made as to what was said during recess, but appellant's counsel now tells us that the witness recognized one of the jurors as being a man with whom he had previously had some unpleasant business dealings.

The court properly sustained an objection to the bringing of such a matter into the case. None of the matters now complained of was raised at trial, and even if they had been, they would not constitute reversible error. The judgment is, therefore, affirmed.

CROCKETT, C. J., and HENRIOD, J., concur.

CALLISTER, Justice (concurring in the result).

I concur in the result on the ground stated in State v. Madden.[1]

The Wade[2]-Gilbert[3] requirements do not apply to on-the-scene investigatory confrontations of a suspect and witnesses conducted shortly after the crime. * * *[4]

TUCKETT, Justice (concurring in the result).

I concur in the result. Not being blessed with extra-sensory perception, I leave it to my brothers who are so endowed to conclude upon the role divine inspiration had in the framing of the Federal Constitution.

HENRIOD, J., concurs also in the concurring opinion of TUCKETT, J.

1. Or., 461 P.2d 834 (1969).
2. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).
3. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).
4. Also see State v. Aldridge, 204 Kan. 599, 464 P.2d 8 (1970); Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, 1283 (1969); Solomon v. United States, 133 U.S.App.D.C. 103, 408 F.2d 1306 (1969).