WEAVER v. UNITED STATES.

No. 14107.

United States Court of Appeals
Ninth Circuit.

Aug. 13, 1954.

Earl C. Broady, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Ray H. Kinnison, Manuel L. Real, Manley J. Bowler, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Weaver was indicted for transporting in interstate commerce a woman, Dolores Penfield, for the purposes of prostitution. He was tried before an experienced judge, Hon. Peirson Hall, after he voluntarily waived a jury.

It is assigned as error that the trial court permitted Dolores Penfield, who was called as a witness for the government, to be impeached by the government, "in the absence of a foundation showing surprise," admitted into evidence a diary of hers which was hearsay as to the defendant "for the limited purpose of testing the verity of this witness," permitted reading to the witness documents purportedly written by her and statements made to government agents, and that the court inquired into the truthfulness of statements of this witness which were hearsay in order to "test the verity of the witness and for impeachment purposes."

It is also assigned as error that the court overruled a motion for acquittal and that the evidence is insufficient to sustain the verdict because transportation, intent and purpose were not proved. The court deals with this ground first and in the first instance without reference to the testimony of Dolores Penfield.

■■ The burden was upon the government to prove the crime beyond a reasonable doubt. From extrajudicial admissions of Weaver and independent evidence, it was shown that Weaver was managing prostitutes and taking their earnings. He had lived for three years with Penfield as man and wife, and the latter was known as Mrs. Weaver, although they were not married. Penfield practiced prostitution before she left Los Angeles at the latter part of this period, while she was in Minneapolis, and after her return to Los Angeles with Weaver. In Minneapolis and after his return to Los Angeles, Weaver was shown to have procured customers for her in this trade. He called her from Los Angeles in Minneapolis, where she was in protective custody, and "told her not to say anything to anyone, that he would send her money," get her a lawyer, and "she would have enough money for her to come back" to Los Angeles, and as soon as she got back "and got to work she could have the car

he had been promising." [1] Weaver told the government agents that he had been to Minneapolis and had returned to Los Angeles with Penfield. He said "he had purchased bus tickets when he was in Minneapolis and returned as far as Las Vegas when they got tired of riding the bus and they took an airplane from Las Vegas to Los Angeles." When they arrived in Los Angeles, they resumed their relations, and Penfield resumed prostitution. On one occasion there was direct testimony that Weaver was obtaining men for her, and inference could be drawn from independent evidence (disregarding that of Penfield) that he had brought her back to "work" for him and that she was turning over her earnings to him. Tedesco v. United States, 9 Cir., 118 F.2d 737, 741–742; Dunn v. United States, 10 Cir., 190 F.2d 496, 498.

From this outline, it is perfectly clear that a trier of fact could have found that Weaver "did knowingly transport and cause to be transported, and did aid and assist in obtaining transportation for, and in transporting a woman * * * in interstate commerce * * * for prostitution, debauchery, and other immoral purposes." The trial judge did find these charges of the indictment to be facts.

No reference need be made to the testimony of Penfield in order to get evidence to support the findings. But her substantive testimony corroborated the fact that she and Weaver lived together as man and wife, that she had practiced prostitution at all times, that he had called her by telephone in Minneapolis, that he sent her a bus ticket to Los Angeles, which she unsuccessfully tried to cash in, that Weaver and she came by the same bus from Minneapolis to Las Vegas and the same airplane from Las Vegas to Los Angeles, and that she gave him money earned from prostitution.

She had talked to agents of the Federal Bureau of Investigation previous to the trial, and according to them had turned over to them a diary, which she told them stated facts, and also letters, which she said she had written to Weaver.

When, on the stand, she denied that she had used the ticket he had sent her to go back to Los Angeles, and denied that she had ridden with him upon the bus and upon the plane, and denied that he knew that she was giving him the proceeds of prostitution, the United States moved for the opportunity to impeach her, claiming surprise. The defense claimed there was no surprise because the witness had refused to testify in accordance with her previous story to government agents when she was before the grand jury. The government, however, had a right to anticipate that, under oath and in court, she would testify in accordance with her story to the Federal Bureau of Investigation. United States v. Graham, 2 Cir., 102 F.2d 436, 442.

The trial court was correct in the initial ruling. Gendelman v. United States, 9 Cir., 191 F.2d 993, 996. The court permitted her to be asked about her answers taken down at the time of an interview with government agents for the limited purposes outlined. She then testified that the diary and the letters were figments "of her imagination," and categorically denied making the specific statements to the agents. The trial court permitted the introduction of these documents solely upon the question of her credibility and not as substantive evidence. See Ellis v. United States, 8 Cir., 138 F.2d 612. She was thoroughly impeached, and afterward the trier of fact could disbelieve any of her testimony except that which was corroborated. Since no jury was present [2] and the exhibits and this part of her testimony were not treated as substantive evidence against Weaver, there was no error.

Judgment affirmed.

---

1. This testimony sufficiently sets the case apart from situations such as portrayed in Mortensen v. United States, 322 U.S. 369, 374, 64 S.Ct. 1037, 88 L.Ed. 1331.

2. Such an inquiry in the presence of a jury might be highly prejudicial to defendant. See United States v. Block, 2 Cir., 88 F.2d 618.