**Ronnie ARNOLD, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21390.**

United States Court of Appeals
Ninth Circuit.

July 19, 1967.

Barry Tarlow, Beverly Hills, Cal., for appellant.

John K. Van de Kamp, U. S. Atty., Anthony M. Glassman, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and BROWNING, Circuit Judges, and SMITH,* District Judge.

BROWNING, Circuit Judge.

Ronnie Arnold and Renee Thelma Meyers were indicted for robbing a Federal Reserve System bank. 18 U.S.C. § 2113(a). Mrs. Meyers pleaded guilty. Mr. Arnold was convicted after trial to the court. He appealed. We affirm.

I

Appellant challenges the sufficiency of the evidence. Briefly stated, the facts established were these.

Shortly before noon on the day in question, Mr. Baker, assistant manager of the bank, saw appellant on a public way near the rear entrance to the bank. A few minutes later appellant entered through the bank's front entrance and spoke to a teller, stating he wished to open a savings account. Given an application card, he asked if he could take it to the center counter, but was told the card must be completed in the teller's

---

* Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

presence. He wrote his name on the card "slowly" and "nervously," stopping from time to time to look to his left, where Mrs. Meyers, who had entered the bank in the meantime, was confronting another bank employee at a teller's window with a note demanding money. Appellant announced he had spoiled the first application card, requested and was given another. Subsequent examination revealed that he had not filled in either card and that he had signed both "Ronald Jones."

The note which Mrs. Meyers presented to the window teller contained the statement "any mistake youl die first bieeing watched." The teller handed Mrs. Meyers $659.00, and she left the bank. Moments later, appellant left the bank, saying that he did not have the identification which the bank required for the opening of an account.

Mrs. Meyers was arrested within a half block of the bank. Appellant joined the crowd at the scene. He was pointed out to Police Officer Crawford by Mr. Baker, the assistant bank manager. Officer Crawford asked appellant what he was doing in the bank. Appellant replied, "What bank?" The officer asked him what he was doing in town. Appellant replied, "Nothing." Officer Crawford then began to "pat down" appellant. The officer noticed a large bulge at appellant's belt line, felt something hard, and said, "It's a gun." Another officer seized appellant's arms. Officer Crawford removed a fully loaded .32-calibre revolver concealed between appellant's trousers and underwear.

Following his arrest appellant told an FBI agent he saw Mrs. Meyers in the bank but said he "had never seen her before in his life." The agent said this would be easily disproved if untrue. Appellant responded "he would worry about that if and when that time came." Mrs. Meyers testified at trial that she recognized appellant in the bank, that

Arnold knew her husband and brother-in-law, and that she had met appellant on occasion in her mother-in-law's home or in the neighborhood.

Appellant told the FBI agent he had gone to a bank five miles from his residence to open a savings account, rather than to one of several nearby, because he would be less likely to withdraw his money. He said he intended to open the account in his own name, and if he had signed a different name "it was only because he couldn't write any better than that." He stated he was carrying the concealed revolver for protection, having "been jumped one time"; and that he had purchased the gun from a friend whom he did not wish to identify.

██ We think the facts proven were sufficient to permit the trier of fact to conclude beyond a reasonable doubt that appellant participated in planning the robbery and that he sought by his armed presence in the bank to make it succeed. Cf. United States v. Garguilo, 310 F.2d 249, 253 (2d Cir. 1962).[1]

## II

Appellant contends that the gun found on his person and the testimony of Officer Crawford and the FBI agent as to his oral statements were fruits of an illegal arrest and search.

Officer Crawford was on motorcycle patrol duty nearby and sped to the scene of the robbery. As he approached he saw Mrs. Meyers in the custody of Officer Rumple, and saw another motor officer, Officer Clewett, speaking to Officer Rumple. Officer Clewett drove up to officer Crawford and said there was "a possible second suspect" still in the bank. The two officers entered the rear entrance and walked through the bank in search of the suspect. As they emerged from the front entrance Mr. Baker approached them, identified himself as the assistant manager of the bank, said that the "possible second suspect"

---

1. We also reject the contention that there was insufficient evidence of conspiracy independent of the demand note to warrant admission of the note against appellant.

was standing on the corner, and pointed to appellant. He told Officer Crawford that he had seen appellant inside the bank at the time of the robbery. Officer Crawford went up to appellant, asked him to remove his hands from his pockets and step from the crowd. The officer then questioned and eventually searched appellant, as already described.

Appellant argues that an arrest occurred when Officer Crawford asked appellant to take his hands from his pockets and step away from the crowd, that the arrest was invalid because made without probable cause, and that the interrogation and search which followed were therefore tainted. Alternatively, appellant argues that the arrest occurred when the officer pinioned Arnold's arms after the gun was found, and that the search was invalid because it preceded the arrest.[2]

■■ Any exercise of police restraint over a person's freedom of movement may constitute a "seizure" within the Fourth Amendment, sustainable only if not "unreasonable." Gilbert v. United States, 366 F.2d 923, 928 (9th Cir. 1966). However, brief on-the-scene detention for limited investigative inquiry, prior to a determination that the person is to be taken into custody, may satisfy the test of reasonableness. See Wilson v. Porter, 361 F.2d 412, 415 (9th Cir. 1966), and other cases cited in Gilbert; Cotton v. United States, 371 F.2d 385, 392 (9th Cir. 1967).

■ The reasonableness of such on-the-scene detention is determined by all the circumstances. The seriousness of the offense, the degree of likelihood that the person detained may have witnessed or been involved in the offense, the proximity in time and space from the scene of the crime, the urgency of the occasion, the nature of the detention and its extent, the means and procedures employed by the officer, the presence of any circumstances suggesting harassment or a deliberate effort to avoid the necessity of securing a warrant—these and other factors will be relevant in balancing the need for limited on-the-scene detention and inquiry against the inconvenience and indignity to the individual detained.

■ Here the offense was serious. It had just occurred. The officer was informed by a fellow officer that a suspect was at large in the immediate vicinity. Cf. Travis v. United States, 362 F.2d 477, 481 (9th Cir. 1966). An officer of the victimized bank identified appellant as the possible offender. Cf. Duval v. United States, 383 F.2d 378 (9th Cir. July 17, 1967); Trimble v. United States, 369 F.2d 950, 951 (D.C. Cir. 1966). Appellant was a member of the crowd, unknown and free to depart at will. The officer had no choice but to accost him. Asking appellant to remove his hands from his pockets and to step away from the crowd were measures dictated by minimal prudence for the offense commonly involves the use of weapons. The action also minimized the embarrassment and indignity to which appellant might be exposed. No force was used. The questions asked were limited to inviting an exculpatory explanation of appellant's presence at the scene of the crime.

■ In light of these circumstances, we think the detention was reasonable and therefore appellant's answers to Officer Crawford's questions were properly admitted in evidence.[3]

2. For his first contention, appellant relies upon Jackson v. United States, 118 U.S. App.D.C. 341, 336 F.2d 579 (1964) ; and Kelley v. United States, 111 U.S.App. D.C. 396, 298 F.2d 310 (1961). For his alternative argument appellant cites Mosco v. United States, 301 F.2d 180 (9th Cir. 1962) and Lee v. United States, 98 U.S.App.D.C. 97, 232 F.2d 354, 355 (1956).

3. Appellant also contends that his oral statements to Officer Crawford were excludable under Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1963). Neither Escobedo, 378 U.S. at 492, 84 S.Ct. at 1766, nor Miranda v. State of Arizona, 384 U.S. 436, 477–478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), applies to on-the-scene ques-

■ Appellant's answer to Officer Crawford's first question was patently intended to deceive. It was sufficient to convert the officer's reasonable suspicion into reasonable belief that appellant had joined in the offense. Cf. United States ex rel. McCullers v. McMann, 370 F.2d 757, 759 (2d Cir. 1967). As we view the record, the search which produced the weapon was an integral part of, and incident to, a process of arrest which was then supported by probable cause. We therefore hold that the gun was properly admitted in evidence, without reaching the question, presently pending before the Supreme Court,[4] of whether a "frisk," as well as a "stop," may be based upon reasonable grounds for suspicion, and thus upon less than probable cause. Cf. United States v. McMann, supra.

### III

The government placed Mrs. Meyers on the stand. She testified that she planned and executed the robbery by herself. The government claimed "legal surprise," and was permitted to cross-examine. On cross-examination Mrs. Meyers admitted that she told an FBI agent she had an accomplice who had helped plan the robbery the night before and was to share the money—that the plan was that she would enter the bank unarmed and her accomplice would go in with a gun to protect her. However, she also testified that her statements to the FBI agent were false, that she had no accomplice, and that appellant was not implicated in the offense.

Appellant asserts that the government was not in fact "surprised" by Mrs. Meyers' testimony, for the government knew long before trial that Mrs. Meyers had repudiated her initial statements to the FBI agent. He therefore contends that it was error for the government to call Mrs. Meyers solely to impeach her and for the trial judge to examine the FBI agent's report containing Mrs. Meyers' initial statements, citing Belton v. United States, 104 U.S.App.D.C. 81, 259 F.2d 811 (1958); Fong Lum Kwai v. United States, 49 F.2d 19 (9th Cir. 1931); and United States v. Biener, 52 F.Supp. 54 (E.D.Pa. 1943).

The government admits prior knowledge that Mrs. Meyers had repudiated her statements implicating appellant, but argues that the government "had a right to anticipate that, under oath, and in court, she would testify in accordance with her story to the Federal Bureau of Investigation." Weaver v. United States, 216 F.2d 23, 25 (9th Cir. 1954). But see Bushaw v. United States, 353 F.2d 477, 480–481 (9th Cir. 1965). This is at least true, the government contends, as to "a witness whom it is under a legal duty or obligation to call, such as an available witness to the crime." Meeks v. United States, 179 F.2d 319, 321, 12 Alaska 545 (9th Cir. 1950), citing also Stevens v. United States, 256 F.2d 619, 622–623 (9th Cir. 1958), and cf. United States v. Freeman, 302 F.2d 347, 350 (2d Cir. 1962).

It should be noted that in this case it cannot be said that the government called the witness solely to inject prior extrajudicial statements into the record. Mrs. Meyers was also examined as to her associations with appellant, and her testimony that she had met appellant on a number of occasions prior to the offense was important to the government's case.

■ We think it is unnecessary to examine the conflicting contentions of the parties as to whether error occurred in dealing with Mrs. Meyers' initial statements to the FBI, for we are satisfied

tioning before the process has shifted from the investigatory to the accusatory stage. See also Cotton v. United States, 371 F.2d 385, 392 (9th Cir. 1967). And it is not contended that Arnold requested and was refused the aid of counsel, a prerequisite to Escobedo's application.

Manning v. State of California, 378 F.2d 357 (9th Cir. May 15, 1967).

4. Sibron v. New York, 386 U.S. 954, 87 S.Ct. 1042, 18 L.Ed.2d 101; Terry v. Ohio, 387 U.S. 929, 87 S.Ct. 2050, 18 L. Ed.2d 989, and Peters v. New York, 386 U.S. 980, 87 S.Ct. 1291, 18 L.Ed.2d 228.

that if error occurred it was harmless. The issue of appellant's guilt or innocence was tried to the court, not to a jury. The record establishes beyond any doubt that the judge was well aware that Mrs. Meyers' out-of-court statements were not to be considered as evidence of appellant's guilt, and that they were not considered in determining that issue.[5] Cf. Weaver v. United States, 216 F.2d at 25.

Affirmed.

5. When the prosecutor mentioned Mrs. Meyers' statements to the FBI in closing argument he was immediately admonished by the judge. The judge said that the statements in the FBI report could not be considered by the court in determining appellant's guilt or innocence, that the statements were not offered for that purpose, and that the FBI report had not in fact been admitted in evidence for any purpose. He said that Mrs. Meyers' statements to the FBI should not have been adverted to, and that if a jury had been present the incident might have caused a mistrial.

In summarizing the evidence which induced him to find appellant guilty, the judge again said that "I have not considered for any purpose the statements made by the confessed robber" set out in the FBI report.