**Otis SOLOMON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 22155.**

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 13, 1969.

Decided Feb. 12, 1969.

Mr. John A. Terry, Washington, D. C. (appointed by this court), for appellant.

Mr. Robert J. Graham, Sp. Asst. U. S. Atty., of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and TAMM, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

Appellant Solomon stands convicted of robbery and assault with a dangerous weapon (a shod foot). On appeal he asserts for the first time that the admission of certain eyewitness identification testimony at trial deprived him of due process and violated his right to counsel. We affirm.

I

The evidence showed that the complaining witness, Simms, was walking home on the night of October 9, 1967, when he was set upon by a group of young men. A young woman, Miss Abney, observed the confrontation, at first from a distance of a few feet, and then from a safer position across the street. She testified that appellant asked Simms if he had any money. In response to Simms' mumbled reply, appellant said, "Oh yes you do." Appellant then directed another member of the group to go through Simms' pockets. When he saw the contents, appellant claimed that Simms had more money, and struck him. He fell down and was kicked by members of the group. Miss Abney then went into a nearby house and called the police. When she returned, the assailants still

surrounded Simms, but they fled at the approach of a squad car. Miss Abney pointed out the assailants, fleeing through the park, to the officers who chased them and caught appellant. He was immediately returned to the scene of the crime, where Miss Abney identified him. Officers found Simms' wallet and keys along the path appellant had taken in his flight.

Simms did not identify appellant at the scene of the crime. According to an officer, he was not "physically in shape" to do so. Miss Abney testified that she had seen Simms before the assault, and that he had been leaning against a fence, apparently intoxicated. According to his own testimony, he was knocked unconscious by the beating he received.

Both Simms and appellant were taken to the 11th precinct station, where Simms identified appellant as well as one Lewis, who was a co-defendant at appellant's trial. The fact of the precinct station identification was brought out by defense counsel on cross-examination of Simms, after he had made an in-court identification of appellant. It was later confirmed on direct examination of a Government witness, Officer Johnson. Defense counsel made no objection, either before or during trial, to the identification testimony of Miss Abney or Simms.

## II

On appeal, Solomon argues that Miss Abney's on-the-scene identification was made in impermissibly suggestive circumstances, that it was made without counsel being present, and that testimony concerning it should have been excluded under both Stovall[1] and Wade-Gilbert.[2] The Government argues that the failure to object to this testimony at trial precludes raising the issue on appeal, and that in any event the identifications were proper under Wade, Gilbert and Stovall. The record with respect to Miss Abney's identification is sufficiently complete to enable us to conclude that there was no error in admitting her testimony.

█ Miss Abney saw appellant confront Simms; she heard him demand money; and she saw him run away when the police arrived. The police pursued and caught him, and immediately brought him back to the scene of the crime where she identified him. Though the circumstances were no doubt suggestive, they fall within the category of immediate on-the-scene identifications which we upheld against Stovall attack in Wise v. United States.[3] We have also held, in Russell v. United States,[4] that such identifications are proper even though no counsel is present to assist the accused where, as here, they are "on-the-scene" and "occur within minutes of the witnessed crime."[5] Under Wise and Russell, her testimony was properly admitted.

## III

█ Appellant also challenges Simms' in-court identification, claiming that it was tainted by the prior precinct station identification,[6] which is said to have been conducted in impermissibly suggestive circumstances and in the absence of counsel. Because defense counsel did not challenge Simms' identification, no hearing was held to elucidate the facts surrounding that identification. We do not know if it was made in the course of a proper lineup, if appellant had counsel present, or if appellant waived his right to counsel. Nor did defense counsel bring out these crucial facts on cross-

---

1. Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

2. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

3. 127 U.S.App.D.C. 279, 281, 383 F.2d 206, 208 (1967).

4. 133 U.S.App.D.C. ——, 408 F.2d 1280 decided January 24, 1969).

5. Id., slip opinion p. —— n. 20.

6. There is no claim of a per se Wade violation; cf. 388 U.S. at 240–241, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

examination. However, assuming that the confrontation was improper under the standards of either *Wade* or *Stovall*, and assuming that the in-court identification was not shown by clear and convincing evidence to have an independent source, we conclude that Simms' testimony was not sufficiently prejudicial to warrant reversal.

Normally an eyewitness identification by the complaining witness will not meet the *Chapman* standards for harmless constitutional error.[7] But where, as here, the case against a defendant is ironclad and the challenged identification is relatively weak, those standards are met. Miss Abney's strong identification of appellant, the fact that he was constantly in view of either her or the arresting officer between the commission of the crime and the apprehension, and the finding of the stolen goods on the path of his flight rendered his conviction a virtual certainty. The testimony as to Simms' intoxicated state, and the fact that he was beaten unconscious in the assault, meant that his in-court identification added little to the strong prosecution case. We conclude that if that identification was erroneously admitted, the error was harmless beyond a reasonable doubt.

### IV

■ Though we do not reach the Government's contention that appellant's *Wade* claim is barred by his failure to raise it before or during trial, a further word on that subject is appropriate. The proper way to raise a *Wade* objection is by a motion to suppress identification testimony before trial. That procedure allows a suppression hearing and a decision on the disputed evidence before a jury is empaneled, and promotes an orderly and uninterrupted trial. A distinctly second-best procedure is a defense motion to suppress during trial. That procedure at least allows decision of the constitutional issue before fatally prejudicial testimony comes before the jury. When *Wade* objections are raised for the first time on appeal, decision of them in the appellant's favor would often require a new trial or at least a remand for a hearing—litigation which could have been avoided had proper procedures been followed.

■ For these reasons we are reluctant to consider *Wade* claims raised for the first time on appeal. On the other hand, Rule 52(b), FED.R.CRIM.P., requires us to exercise our discretion whether to notice "[p]lain errors or defects affecting substantial rights" even when no objection is made at trial. Improper identification procedures may violate constitutional rights, and it is difficult for us to conclude that these rights are not "substantial." Further, we are reluctant to penalize defendants for the mistakes of their counsel, who are often appointed by this court, and who often have little experience in criminal litigation.

■ To avoid the dilemma posed by these competing factors, we think it would be better practice if District Judges, when confronted by cases which appear to involve identification testimony, would on the record and out of the presence of the jury inquire of defense counsel whether they object on *Wade* or *Stovall* grounds to any identification testimony which might be offered. This simple procedure could also, and perhaps better, be performed by the District Judge hearing pre-trial motions in the case, if any such motions are made. But, in any case, the trial judge might well make a final check of the matter. The simple question and answer could do much to avoid retrials, remand hearings and hearings on motions collaterally attacking convictions.

Affirmed.

---

7. " * * * [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. * * * "

Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).