**UNITED STATES of America,**
**Appellee,**

v.

**Lloyd Edward WRIGHT, Appellant.**

**No. 20104.**

United States Court of Appeals,
Eighth Circuit.

Nov. 4, 1970.

Wayne George Patton, St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before MATTHES, Chief Judge, HEANEY, Circuit Judge, and VAN PELT, Senior District Judge.

MATTHES, Chief Judge.

Lloyd Edward Wright was charged by indictment with robbing the New Age Federal Savings and Loan Association, St. Louis, Missouri, on September 11, 1969 and with assaulting and placing in jeopardy the life of the president of that institution by use of a firearm in violation of 18 U.S.C. § 2113(a) and (d). Wright was found guilty by a jury as charged, and on December 23, 1969, the district court sentenced him to 5 years imprisonment.[1]

On appeal, Wright contends that courtroom identifications of him by witnesses Pamela Thomas and Walter Younge, Jr., should have been excluded; that the testimony of an alleged accomplice, Alphonso Byndon, was incompetent and further that an extrajudicial statement brought out by the Government in the examination of Byndon deprived him of a fair trial. We consider these alleged errors seriatim.

Appellant claims that the in-court identifications should have been excluded, because the Government failed to establish that the identifications were not tainted by a pretrial lineup which may have been conducted either in the absence of counsel or in an impermissibly suggestive manner.

At trial, Walter Younge, Jr. testified that at the time of the robbery he was on an open balcony which overlooked the

---

1. Sentence was ordered to be served consecutive to a 15-year term imposed on Wright in the district court on December 1, 1969 after conviction upon his plea of guilty to armed robbery of the same institution on October 9, 1969 in violation of 18 U.S.C. § 2113(a) and (d).

main floor and the tellers' counter, and that from this vantage point he was able to observe the hold-up. Younge made a positive, unequivocal, in-court identification of appellant as one of the two robbers. Younge stated that he was able to observe Wright the entire time he was in the loan association and that he had a clear, unobstructed view of his face several times, because appellant's mask or scarf kept slipping off. Younge further testified that he watched the robbers from a window as they left the building and then chased them down the street. There is nothing in the record to indicate that Younge ever viewed a lineup or that he had identified appellant other than at trial.

Mrs. Pamela Thomas, an employee of the association, testified that she was working at the tellers' counter on the main floor at the time of the robbery. She identified appellant in court as one of the two robbers, and stated that she saw his face during the hold-up, because his mask or scarf fell down a number of times. On cross-examination Mrs. Thomas stated that she could be mistaken in her identification of appellant, but that she thought he was one of the hold-up men. She also testified that she had viewed a lineup but had been unable to identify anyone.

We note at the outset that the admissibility of these in-court identifications is questioned for the first time on this appeal. The admissibility of this evidence was not challenged prior to trial by a motion to suppress or during trial by objection or motion to strike. Nor was this ground included in the motion for new trial after the verdict was returned. Thus, the trial court was not afforded the opportunity to explore or rule upon the admissibility of these in-court identifications. In Solomon v. United States, 133 U.S.App.D.C. 103, 408 F.2d 1306 (1969), an in-court identification was challenged for the first time on appeal on the ground that it was tainted by a prior precinct station identification which was said to have been conducted in the absence of counsel and in impermissibly suggestive circumstances. As in the instant case, because defense counsel did not object to the in-court identification no hearing was conducted to elucidate the facts surrounding the precinct identification. The court did not know if it had been made in the course of a proper lineup, if appellant had counsel present or if he had waived his right to counsel. Nor had defense counsel brought out these crucial facts on cross-examination. In discussing the failure of the defense to raise the *Wade* claim before or during trial, the court noted:

> "The proper way to raise a *Wade* objection is by a motion to suppress identification testimony before trial. That procedure allows a suppression hearing and a decision on the disputed evidence before a jury is empaneled, and promotes an orderly and uninterrupted trial. A distinctly second-best procedure is a defense motion to suppress during trial. That procedure at least allows decision of the constitutional issue before fatally prejudicial testimony comes before the jury. When *Wade* objections are raised for the first time on appeal, decision of them in the appellant's favor would often require a new trial or at least a remand for a hearing—litigation which could have been avoided had proper procedures been followed." Id. at 1309.

The court went on to state that for these reasons it was reluctant to consider *Wade* claims raised for the first time on appeal, but that even when no objection is made at trial, Rule 52(b), Fed.R. Crim.P. required the court to exercise its discretion whether to notice "plain errors or defects affecting substantial rights." However, as we held in United States v. Wenner, 417 F.2d 979, 982 (8th Cir. 1969), cert. denied, 396 U.S. 1047, 90 S.Ct. 700, 24 L.Ed.2d 692 (1970), ". . . because of the inadequacy of the record resulting from appellant's silence in the district court we are not in a position to intelligently and responsibly consider and decide these questions under the 'plain error' rule."

■ Moreover, we do not view this case as one appropriate for a remand to the trial court for a hearing. Here, not only does the record fail to show that witnesses Thomas and Younge ever identified appellant prior to trial, but it is not even contended on appeal that these witnesses ever viewed or identified appellant in a lineup. Further, the record does not show, and it is not alleged on appeal, that appellant was presented in a lineup in the absence of counsel or that a lineup was conducted in an impermissibly suggestive manner. Compare United States v. Valez, 431 F.2d 622 (8th Cir., 1970). Under these circumstances, and confining our holding to the facts in this case, we believe that a remand to the district court would not be a proper exercise of our discretionary authority. Cf. Gray v. United States, 114 U.S.App. D.C. 77, 311 F.2d 126 (1962), cert. denied, 374 U.S. 838, 83 S.Ct. 1886, 10 L.Ed.2d 1057 (1963). The record before us does not demonstrate error affecting appellant's substantial rights by the reception into evidence of the eyewitness in-court identifications.

■ In so holding, however, we sanction the suggestion of the District of Columbia Court of Appeals in Solomon v. United States, *supra* 408 F.2d at 1309, that "it would be better practice if District Judges, when confronted by cases which appear to involve identification testimony, would on the record and out of the presence of the jury inquire of defense counsel whether they object on *Wade* or *Stovall* grounds to any identification testimony which might be offered." Such a procedure would promote the orderly administration of justice so often disrupted by questions belatedly raised for the first time on appeal or on motions collaterally attacking convictions.

We turn next to the allegation that "the court erred in permitting the testimony of an alleged accomplice, Alphonso Byndon, to be considered by the jury, when Byndon offered no competent evidence against appellant, and further committed error in that an extrajudicial statement was brought out by the Government, which deprived appellant of a fair trial." First, the record clearly shows that Byndon's testimony was both competent and relevant. He testified that a robbery of the New Age Federal Savings and Loan Association was committed on September 11, 1969; that he participated in this crime, and that he was armed with a sawed-off shotgun. He freely testified as to all the details of the robbery, and further stated that he had an accomplice in the perpetration of the hold-up. However, when asked by the prosecutor to name his accomplice, Byndon replied that he would "rather not say." Since Byndon had already pled guilty to the robbery, he neither could nor did he attempt to invoke the Fifth Amendment privilege against self-incrimination as justification for his refusal to respond. Under these circumstances, we believe the district court could have directed him to answer, but for reasons not shown on the record,[2] the court did not do so.

■ The prosecutor then twice attempted to ask Byndon if he had told F.B.I. agents who his accomplice was. Objections by defense counsel were interjected before completion of each question. Out of an abundance of caution, the district court sustained each of the two objections, and the matter was not pursued further. Defense counsel did not move that the questions be stricken, nor did he request that the jury be specially instructed. Nevertheless, it is now urged on appeal that the Government's reference to Byndon's statement to F.B.I. agents implied to the jury that appellant had been previously identified as an accomplice to the robbery, and that the inference which arose from this line of questioning was prejudicial to appellant

2. The record shows that counsel approached the bench and that a discussion was had out of the hearing of the jury. However, the record does not reveal the district court's ruling or reasoning on Byndon's refusal to respond to the Government's questions.

and deprived him of a fair trial. An assiduous examination of the record leads us to conclude that there is no merit to this contention. We have carefully considered the cases cited by appellant in support of this argument and find them inapposite. This case does not involve a situation where substantial and incriminating matter was presented to the jury through prolonged and repetitive questioning or by reading an extrajudicial confession. The record does not support any inference of prosecutorial misconduct or a deliberate attempt by the Government to exploit a witness' refusal to answer on the ground of a properly invoked testimonial privilege. Nor is this a case in which a witness' refusal to testify is the primary or sole source of the inference that the appellant engaged in criminal activity with the witness. Appellant was identified by two eyewitnesses and the record conclusively demonstrates there were two participants. Any possible implications arising from the two thwarted questions attempted by the Government are cumulative at best.

In summary, we are unable to perceive that these uncompleted and unanswered inquiries resulted in substantial prejudice to appellant. The trial court, in sustaining objections to the questions, afforded appellant all the relief sought. No requests for instructions or other curative devices were made. On facts similar to those presented here, the Supreme Court in Namet v. United States, 373 U.S. 179, 190, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963) held:

> "The petitioner would have us hold that even in these circumstances the court committed reversible error because it did not, *sua sponte*, take some affirmative action. We see no reason to require such extravagant protection against errors which were not obviously prejudicial and which the petitioner himself appeared to disregard."

See also, Reiss v. United States, 324 F.2d 680, 683 (1st Cir. 1963), cert. denied, Jacobs v. United States, 376 U.S. 911, 84 S.Ct. 667, 11 L.Ed.2d 609 (1964).

Affirmed.

HEANEY, Circuit Judge (concurring):

I concur in the judgment of the Court, but I cannot accept the majority's view of the case with respect to the testimony of the alleged accomplice, Alphonso Byndon.

The majority refers only to the attempt of the government to introduce extrajudicial statements made by the witness to FBI agents. But the prosecutor's questioning ranged beyond that narrow issue.

Alphonso Byndon had already been sentenced on his plea of guilty to participation in the robbery. At the appellant's trial, he admitted his participation in the crime and described how it occurred. When asked to name who was with him, the witness stated he would rather not say. There followed a conference at the bench, but no instruction to answer the question was given by the court, the reason for such failure being undisclosed. The government's attorney then proceeded to ask whether the witness recognized the appellant. An objection by the appellant was sustained. The prosecutor then twice asked if the appellant was with the witness during the robbery, and the witness again refused to name his accomplice. Over defense objection, the witness testified that he had known the appellant for eight years, and that he was a third or fourth cousin of the appellant. Later in the examination, the prosecutor attempted to introduce evidence of statements, incriminating the appellant, made by the witness to FBI agents. The question specifically naming the appellant was objected to, and the court sustained the objection. There were numerous additional instances, however, in which the witness simply answered the prosecutor's questions by stating that he had not told the agents who his accomplice was because they already knew the accomplice's identity.

It was error for the court to permit the questioning of the witness in this manner. First, the object of the questioning was to get into evidence statements the witness had allegedly made incriminating the appellant. Generally, this is impermissible procedure. On facts similar to the case here, the Sixth Circuit held that it was improper to use extrajudicial statements of a witness who, at trial, gives no testimony involving the defendants in the crime. United States v. Duff, 332 F.2d 702 (6th Cir. 1964). Extrajudicial statements are not evidence. Arnold v. United States, 382 F.2d 4 (9th Cir. 1967); Ellis v. United States, 138 F.2d 612 (8th Cir. 1943). Secondly, the prosecutor's questioning constituted an improper use of cross-examination to impeach his own witness, without the requisite showing of surprise and necessity to rehabilitate the government's case. United States v. Miles, 413 F.2d 34 (3rd Cir. 1969); Weaver v. United States, 216 F.2d 23 (9th Cir. 1954); United States v. Block, 88 F.2d 618 (2nd Cir. 1937). Once the witness refused to name his accomplice, the court should have ordered him to answer on pain of contempt, or he should have excused the witness. The questioning which followed, bringing up the appellant's name again and again, allowed the jury to draw inferences of guilt by innuendo, not by any material evidence.

Even so, I would affirm on the basis of the other evidence. The defense called no witnesses. The government's evidence that an armed robbery had been committed by two robbers was so strong that the only issue substantially in dispute was the identity of the second robber. Three witnesses testified for the government. One Joseph O. Banks, the secretary-manager of the bank, gave a description of the robbers, although he was unable to identify the appellant. Two other witnesses, Pamela Thomas and Walter Younge, both had ample opportunity to observe the robbers in the course of the robbery, and both positively identified the appellant at trial. This evidence was weighty enough to sustain the appellant's conviction, even disregarding Byndon's prejudicial testimony.

Therefore, I join in affirming the judgment of conviction.