UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Melvin DAVIS, Defendant-
Appellant.

No. 71-1545.

United States Court of Appeals,
Ninth Circuit.

April 10, 1972.

Alan Saltzman (argued), of Saltzman
& Goldin, Hollywood, Cal., for defend-
ant-appellant.

Jan Lawrence Handzlik (argued),
Eric A. Nobles, Asst. U. S. Attys., Wil-
liam D. Keller, U. S. Atty., Los Angeles,
Cal., for plaintiff-appellee.

Before MERRILL, KOELSCH and
KILKENNY, Circuit Judges.

MERRILL, Circuit Judge:

Appellant was subjected to an investi-
gatory stop and thereafter to a search
which disclosed bank checks to various
payees, on the basis of which he was in-
dicted for possession of stolen mail. A
motion to suppress the seized evidence
was denied, and appellant was tried and
convicted. On appeal he asserts as error
denial of the motion to suppress.

 We need not reach questions
concerning the validity of the search.[1]

1. The Government would justify the search
as a consent search; defendant handed
over an envelope containing the checks
after the officer had asked to see it.
Since certiorari to this court has been
granted by the Supreme Court in Busta-
monte v. Schneckloth, 448 F.2d 699 (9th
Cir. 1971), cert. granted 405 U.S. 953,
92 S.Ct. 1168, 31 L.Ed.2d 230 (1972),
the law of this circuit on the subject of
consent searches is at present somewhat
uncertain.

In our judgment there was no justification for the original stop from which flowed the investigation that precipitated the search.

The stop made by two Los Angeles police officers was based on the following facts, testified to by the searching officer at the hearing on the motion to suppress. He and his partner, in their patrol car, passed a motel known to them to be frequented by narcotics addicts. The officers observed the defendant and three or four other males standing in front of the motel, all of whom glanced at the car as it passed. The defendant then was "having difficulty sustaining his balance * * *. He looked as if he was going to fall down * * *. He was swaying from side to side * * *. He possibly was injured or under the influence of an intoxicant * * *. At that time, we didn't know what was wrong. We just felt that there was something wrong."

The police car turned around and returned to the motel in a matter of seconds. Defendant then was a passenger in a car that was leaving the motel.

It was on the basis of these observations and articulated suspicions that the testifying officer's partner ordered the car to stop. That the basis for the stop —the feeling that something was wrong —was not concern for defendant's welfare is indicated by the fact that the defendant and the driver were summarily ordered out of the car and frisked [2] by the stopping officer while his partner "approached" those persons who were still standing by the motel.

■ These observations and suspicions do not sufficiently suggest that some criminal enterprise was afoot. They suggest that an intoxicated person was being driven away from a resort of ill repute. This does not suffice under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the decisions of this court permitting certain investigatory stops, e. g., Wilson v. Porter, 361 F.2d 412 (9th Cir. 1966); United States v. Jackson, 448 F.2d 963 (9th Cir. 1971). See generally Arnold v. United States, 382 F.2d 4, 7 (9th Cir. 1967).[3]

On appeal, the Government advances the theory that after the original and unjustified order to stop, the car was driven in such a fashion as to generate new and justified suspicion of criminal activity. The record, however, is barren of proof of either suspicion or suspicious conduct.

It appears from the testimony of the searching officer that the stopping officer was in the path of the car, and that after being ordered to stop the driver did not do so immediately but continued to approach the stopping officer until the car came to a halt beside him after the stop order had been repeated.[4] The stopping officer by then had drawn his gun and proceeded to order the occupants from the car at gun point. The stopping officer gave no testimony, and

2. The search which disclosed the bank checks, see note 1, supra, was not part of this initial frisk, and thus we do not expressly consider the frisk itself.

3. In determining whether a particular stop is reasonable under the Fourth Amendment, the need for police action must be balanced against the intrusion and inconvenience occasioned by the stop. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Arnold v. United States, 382 F.2d 4, 7 (9th Cir. 1967). Important to this determination are assessments of such factors (not infrequently overlapping) as the seriousness of the suspected offense, the need for immediate police work, and the need for preven-

tive action. See, e. g., Sibron v. New York, 392 U.S. 40, 72–73, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (Harlan, J., concurring); Arnold v. United States, supra, 382 F.2d at 7; LaFave, "Street Encounters" and the Constitution: Terry, Sibron, Peters, and Beyond, 67 Mich.L. Rev. 39, 65–67 (1968).

4. The searching officer testified: "Well, a few moments later he commanded them again. At this time it appeared that the vehicle was headed directly at him. He stepped aside and he drew his revolver and pointed it at I believe the passenger and once again ordered the vehicle to stop."

we have no way of knowing how he judged the situation or what impelled him to act as he did. On this record we cannot bootstrap his conduct into its own justification.

We conclude that denial of the motion to suppress was error.

Reversed and remanded for dismissal.