**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Morris Paul LEAL and Morton Ritchie Leal, Defendants-Appellants.**

**No. 26683.**

United States Court of Appeals,
Ninth Circuit.

May 1, 1972.

Bruce S. Silverman (argued), San Francisco, Cal., for defendants-appellants.

Lloyd V. Anderson, Jr., Asst. U. S. Atty. (argued), Duane K. Craske, U. S. Atty., Agana, Guam, for plaintiff-appellee.

Before BROWNING, CARTER and HUFSTEDLER, Circuit Judges.

CARTER, Circuit Judge:

Morris Paul Leal and his brother, Morton Ritchie Leal, were convicted and sentenced on a charge of interstate transportation of stolen securities, 18 U.S.C. § 2314. On appeal they make the following contentions: 1.) The stop of the car which appellant Morris Leal was driving was in violation of his Fourth Amendment rights. 2.) The search of their hotel room and car, and the seizure of traveler's checks was in violation of their Fourth Amendment rights. 3.) Appellants were not advised of their constitutional rights until after their arrest, and any statement made prior to their arrest should have been excluded at trial. 4.) Appellants were denied their right to a speedy trial as guaranteed by the Sixth Amendment. 5.) The removal of the appellants' trial to Guam prevented them from presenting an effective defense. In reviewing the contentions, we must view the evidence in a light which is most favorable to the government. After reviewing each contention we find them to be unsupported by the record, and affirm the convictions.

## I. *The Stop.*

Morris Leal and a Miss Leonore Correa were in the Pussy Cat A Go Go, a Las Vegas, Nevada discotheque. While there Captain Anderson of the Clark County Sheriff's Department observed Miss Correa playing the slot machines. He walked by her and in doing so glanced into her open purse and observed a large amount of currency and what appeared to be checks. This stack of currency and checks appeared to be two to two and one-half inches thick. Because of the youthful appearance of Miss Correa, the Captain's suspicions were aroused. He notified Sheriff's detectives Hansen and Lovingood.

When the detectives arrived, Captain Anderson informed them of what he had observed and pointed out to them the car of appellant Morris. The record does not indicate how he knew which car was appellant's. The detectives then started a records check on the vehicle. While this was in progress, the appellant Morris and Miss Correa left the discotheque and drove off in the car. The car had an Arizona license plate. The detectives followed them for ten minutes while the check was being made. They were finally notified that the vehicle was an Avis Rent-A-Car from a San Francisco agency with a destination of San Antonio, Texas. The check did not reveal if the car was overdue or wanted by any law enforcement agency. The detectives then proceeded to stop the vehicle. The appellants contend this stop was in violation of the constitutional rights of Morris as guaranteed by the Fourth Amendment.

To establish that a stop without a search is reasonable, the government must show that such a stop was based on a founded suspicion. As this court stated in Wilson v. Porter (9 Cir. 1966) 361 F.2d 412, 415: ". . . [D]ue regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could

have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." Accord, United States v. Blackstock (9 Cir. 1971) 451 F.2d 908; United States v. Jackson (9 Cir. 1971) 448 F.2d 963; United States v. Oswald (9 Cir. 1971) 441 F.2d 44; United States v. Brown (9 Cir. 1970) 436 F.2d 702. In determining the reasonableness of a particular stop, the need for police action must be weighed against the inconvenience and intrusion which the search entails. Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Arnold v. United States (9 Cir. 1967) 382 F.2d 4, 7. In the present case the actions of the police in stopping the vehicle were founded on reasonable suspicions and were not arbitrary. The manner in which the stop was conducted involved the minimum amount of embarrassment and indignity to Morris and Miss Correa.[1]

II. *The Search and Seizure.*

After Morris and Miss Correa were stopped, the detectives questioned Morris about the money Miss Correa was carrying. He said he was a commercial fisherman from Guam. He further stated that he had recently sold a large catch of fish and this is why they had so much money. Detective Hansen testified that he believed the appellant Morris at the time and was satisfied with the explanation.

The detective then asked Morris for the vehicle registration. Morris produced a rental agreement which was in his brother's name, Morton Leal. When asked about the name discrepancy, Morris replied that the car was rented to his brother, who was staying with him at the Tropicana Hotel, Room 631. Morris then told the detectives that if they

would follow him to the hotel he would clear up any questions they might have about his possession of the car.

The detectives agreed and followed them to the hotel. Then all four of them went to Room 631. Morris unlocked the door with his key. Detective Lovingood entered first, followed by Miss Correa, Morris and Detective Hansen. Morton Leal was in the room and Detective Lovingood asked him to identify himself, which he did.

As Detective Hansen entered the room, he passed a closet with the sliding door pushed open. Detective Hansen glanced into the closet and observed an open suit case containing a large number of traveler's checks. After commenting to appellants that they should be more careful about leaving such things lying around and advising them of the high crime rate in Las Vegas, he noticed that the checks were not endorsed. He thought this unusual because traveler's checks are usually signed at the time of purchase and then endorsed again by the purchaser when the checks are cashed. Detective Hansen proceeded to telephone Central Credit in Las Vegas, which was in contact with other law enforcement agencies.

While Detective Hansen was on the telephone, Morton continued to talk and, among other things, stated that the traveler's checks were from a travel agency in Guam, operated by an uncle of Morton and Morris; that there was just a family problem which could easily be cleared up.

From the telephone, Detective Hansen learned the checks had been stolen in Guam 11 days earlier. The appellants and Miss Correa were arrested. A *Miranda* warning was then given to appellants. They attack its sufficiency, but we do not decide the question since no

---

1. On April 10, 1972, United States v. Davis, 459 F.2d 458, was decided by another panel of this court which invalidated an investigatory stop. It does not change our views in this case. Each case must be decided on its particular facts. "The reasonableness of such on-the-scene detention is determined by all the circumstances." Arnold v. United States (9 Cir. 1967) 382 F.2d 4, 7. The circumstances here lead us to conclude that the stop was reasonable as based on a founded suspicion.

questioning of the appellants took place after the warning was given. The confessions were obtained the following morning by an FBI agent who first fully warned appellants of their *Miranda* rights.

The appellants contend the search was illegal because the detectives did not have a search warrant. We find that there was no search. Morris invited the detectives into his hotel room by asking the detectives to follow him to his room and opening the door for them. The detectives were lawfully within the room at the time the checks were seen. A policeman has a right to observe anything that is in plain view. Thus we conclude that Detective Hansen's observation of the checks did not constitute a search of the room. Since no search was conducted, a search warrant was not necessary. United States v. Freeman (9 Cir. 1970) 426 F.2d 1351. See Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). The post-arrest search of appellants and Miss Correa was proper under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

After appellants were arrested they voluntarily pointed out the locations of other checks, both in their room and their car. We can find no violations of any Fourth Amendment rights in the search of the room and automobile and the seizure of the checks.

III. *Miranda Warnings.*

Appellants contend that any statements they made prior to the explanation of their constitutional rights should have been excluded at trial. We disagree.

At the time of the stop, Morris was asked to identify himself. The identification of oneself is not self-incriminating and thus not protected by the Fifth Amendment. California v. Byers, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971). We have commented above on the propriety of the stop. The requirement in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is intended to protect those persons subjected to custodial interrogation. As to stops generally, see Lowe v. United States (9 Cir. 1969) 407 F.2d 1391.

At the time of the stop the interrogation as to the money was brief and satisfied the detectives. The interrogation as to the registration was also brief. At the time of the stop, there was no requirement that appellant Morris Leal be warned of his constitutional rights.

At the hotel room Detective Lovingood asked Morton to identify himself. This in itself is not self-incriminating. After Morton was asked to identify himself, the appellants were not questioned. Any statements made by appellants were voluntary and not the result of interrogation by the detectives. Since *Miranda, supra,* does not apply to voluntary statements but only interrogation, the statements were correctly admitted at trial. Chavez-Martinez v. United States (9 Cir. 1969) 407 F.2d 535.

IV. *Speedy Trial.*

Appellants contend they were denied their right to a speedy trial as guaranteed by the Sixth Amendment. The record indicates a one-year delay between indictment and trial. Most of the delay was due to the removal of the trial to Guam, at the appellants' instigation. Likewise, some of the further delay was at the appellants' request. We find no violation of their Sixth Amendment rights.

V. *Trial in Guam.*

Appellants maintain that because the trial was removed to Guam they could not present a defense witness because the cost of transportation to Guam was too expensive. However, since the appellants were indigent the defense witness could have been transported at government expense under Rule 17(b) of the Federal Rules of Criminal Procedure.

Affirmed.

HUFSTEDLER (dissenting):

I respectfully dissent on the sole ground that the evidence was insufficient to create the "founded suspicion" required to justify a brief, informal, investigatory detention of Morris Leal. (Wilson v. Porter (9th Cir. 1966) 361 F.2d 412, 415; *cf.* Terry v. Ohio (1968) 392 U.S. 1, 33, 88 S.Ct. 1868, 20 L.Ed.2d 889.)

Viewed in the light most favorable to the Government, the police officers knew the following facts at the time the stop was made: (1) A "very young appearing" woman (Miss Correa) was seen in the company of "a possibly Oriental male" (Morris Leal) in a night club-gambling casino in Las Vegas; (2) the young woman was playing the slot machines, her handbag was open, and an officer saw that she had a stack of currency perhaps two and one half inches thick; (3) the young woman and the man were driving an automobile with an out-of-state license plate; (4) the automobile had been rented in San Francisco with a listed destination of San Antonio, Texas.

This combination of facts occurring in Las Vegas is totally unremarkable. Las Vegas is on an ordinary route to San Antonio. Las Vegas is crowded with out-of-state automobiles, many of them rented. Persons carrying substantial amounts of currency in gambling casinos are commonplace. Do the additional facts that the carrier of currency is a young woman accompanied by a "possi-bly Oriental male" convert those innocuous incidents into a founded suspicion that the young couple may be engaged in unlawful activity?[1] I think not.

Each case in which the founded suspicion test is applied turns on its own facts. None of the cases cited in the majority opinion to illustrate applications of the test has any similarity to the facts of this case. However, all of the cases, including this one, have the common thread that developments after the initial stop revealed evidence of criminal conduct. It is tempting to infer that a suspicion was originally well founded when later events disclose criminality. The temptation is considerably lessened when one recognizes that the only cases one sees in the criminal process are those in which criminal conduct is ultimately found; those persons who are subjected to illegal detentions who have nothing to disclose do not find themselves in criminal courts. The supervening reason for resisting the temptation, however, is that it is constitutionally foreclosed. Neither illegal detentions nor illegal searches can be justified by what they turn up. (*E. g.,* Terry v. Ohio, *supra*; Sibron v. New York (1968) 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.)

Because I am convinced that the initial stop was invalid, the consensual search and seizure and the arrests which followed therefrom are likewise invalid. (Wong Sun v. United States (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.) Accordingly, I would reverse.

[1]. "[T]he citizen who has given no good cause for believing he is engaged in . . . [unlawful] activity is entitled to proceed on his way without interference." Brinegar v. United States (1949) 338 U.S. 160, 177, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879. *See also* Carroll v. United States (1925) 267 U.S. 132, 154, 45 S.Ct. 280, 69 L.Ed. 543.