**UNITED STATES of America,
Plaintiff-Appellant,**

**v.**

**Dennis George HOLLAND,
Defendant-Appellee.**

**No. 74–2360.**

United States Court of Appeals,
Ninth Circuit.

Jan. 24, 1975.

Rehearing Denied March 17, 1975.

Certiorari Denied June 16, 1975.

See 95 S.Ct. 2634.

Sidney I. Lezak, U. S. Atty., Portland, Or., for plaintiff-appellant.

Howard R. Lonergan, Portland, Or., for defendant-appellee.

Before KOELSCH and CARTER, Circuit Judges, and ZIRPOLI,* District Judge.

## OPINION

JAMES M. CARTER, Circuit Judge.

The Government appeals from the judgment of the district court, granting defendant Dennis George Holland's motion to suppress evidence obtained pursuant to an investigatory stop by officers of the Coos County, Oregon Sheriff's Office. The court held that the officers "lacked sufficient specific and articulable facts to create a founded suspicion." We reverse.

The evidence at the hearing on the motion to suppress, which is not in dispute, indicated that on the evening of January 19, 1974, Sheriff's Office deputies, pursuant to a search warrant, discovered numerous guns, narcotics paraphernalia, and a batch of methamphetamine in the process of "being cooked" in a small frame house located on a narrow, rutted, dirt road in a rural area near Bandon, Oregon. They also searched for, but did not find, a white male fugitive, described as armed and dangerous and believed to be in the immediate area. An officer was left at the house to investigate and preserve the evidence until morning.

At approximately 1:00 a. m. on January 20, 1974, Deputy Erhardt, in uniform and driving a marked police car, met Detective Kaufman on the dirt road on which the house, then being searched, was located. Ten to fifteen minutes later, they observed a 1961 Ford Falcon travelling toward them at five to eight miles per hour.

The slow progress of the vehicle caused the officers to believe that it was unfamiliar with the area and looking for a particular address. As the vehicle passed the officers, the occupants (a male and a female) stared at the officers for what Deputy Erhardt testified had seemed to him to be an unusually long time. They had observed only one other vehicle on the road since earlier that evening and that vehicle was not stopped because it appeared to contain a family (man, woman, and children).

At the hearing, Detective Kaufman testified that because of the time of night, the extremely unusual situation at the nearby house still being searched, and the fact that the fugitive was still unaccounted for, he told Deputy Erhardt to check out the car if it stayed in the area. Deputy Erhardt testified that in his experience it was unusual for people to be searching out an address to pay a social visit in that rural area at that time of night.

After the defendant's vehicle reached a dead end, it slowly re-approached the officers, turned onto the intersecting dirt road on which the house being searched was located, and then further slowed to a "walking speed."

There were only three houses on that dirt road, one on either side of the house being searched, each some distance apart. Although the officers thought that the vehicle was probably heading for the house being searched and that

---

* Honorable Alfonso J. Zirpoli, United States District Judge, Northern District of California, sitting by designation.

the occupants of the car might have been stalling to see if the officers would leave the area, they continued only to observe the defendant's vehicle until it passed the first house on the road and was less than 150 feet from the house being searched—the next house it would reach.

Deputy Erhardt then stopped the vehicle and asked the occupants for identification. After they both produced Oregon driver's licenses, he asked to see the vehicle registration. When they could not find it, Deputy Erhardt then asked the driver (the defendant) if he could look in the car and the defendant replied, "Sure. Go ahead." Upon leaning into the car, Deputy Erhardt observed a sawed-off rifle stock partly covered by a cloth lying between the front bucket seats of the car. It is this shotgun which forms the basis for the charges against the defendant, and which was suppressed by the district court.

In Wilson v. Porter, 361 F.2d 412 (9 Cir. 1966), this court noted that

"due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." Id. at 415 (emphasis added).

Purporting to apply this standard, the district court held that the stop of the defendant's car just prior to its reaching the house being searched was an unreasonable seizure because the defendant's conduct was "consistent with innocent behavior" in that the defendant may have intended to drive past the house in question to the other house not connected with criminal activity.

In so holding, however, the court misapplied the language from Porter, supra, by failing to give adequate consideration to the language italicized. The proper test is not whether the conduct of the car itself was "consistent with innocent behavior," but rather whether the officers were reasonable, under all of the circumstances, in believing that the car or its occupants, were involved or about to become involved in criminal activity. See United States v. Ward, 488 F.2d 162, 169 (9 Cir. 1973) (en banc).

Clearly, the officers were not required to rule out all possibility of innocent behavior before initiating a brief stop and request for identification. The test is founded suspicion, not probable cause. Even if it was equally probable that the vehicle or its occupants were innocent of any wrongdoing, police officers must be permitted to act before their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent.[1] "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

This court, in Arnold v. United States, 382 F.2d 4 (9 Cir. 1967), indicated the factors to be considered in determining the validity of investigatory stops:

"The reasonableness of such on-the-scene detention is determined by all the circumstances. The seriousness of the offense, the degree of likelihood that the person detained may have witnessed or been involved in the offense, the proximity in time and space from the scene of the crime, the urgency of the occasion, the nature of the detention and its extent, the means and procedures employed by the

---

1. In Frye v. United States, 315 F.2d 491, 494 (9 Cir.), cert. denied 375 U.S. 849, 84 S.Ct. 104, 11 L.Ed.2d 76 (1963), this court noted that local peace officers have a duty to be alert for suspicious circumstances and investigate further whenever these circumstances indicate that the officers should do so.

officer, the presence of any circumstances suggesting harassment or a deliberate effort to avoid the necessity of securing a warrant—these and other factors will be relevant in balancing the need for limited on-the-scene detention and inquiry against the inconvenience and indignity to the individual detained." *Id.* at 7.

In the present case, the seriousness of the offenses discovered and likely to take place included involvement with an illegal drug factory (still "cooking" when the officers arrived at the house), an arsenal of stolen firearms, and an armed fugitive, all creating a risk to the personal safety of the searching officers still in the house. The officers knew that there was a male fugitive in the area who was connected with the house, and from the movements of the defendant's vehicle they reasonably believed that it had at least a 50% likelihood of visiting and therefore becoming unavoidably involved in the activity going on at the house being searched. The car was only 150 feet from the house at the time it was stopped, on a lightly-travelled dirt road at 1:00 a. m., and the occupants had stared at the officers for what they believed to be an unusually long time.

Further, there were no circumstances suggesting harassment or a deliberate effort to avoid the necessity of securing a warrant. The officers waited until the car had driven up and down the street, had passed the first of the three houses on the dirt road, and was about to reach the house being searched, before initiating the stop.

The nature of the detention and the means and procedures employed by the officers were also reasonable. When stopped, the defendant's car was travelling at a very slow ("walking") speed, and the occupants of the vehicle were only asked for identification. The initial stop involved no public embarrassment and no physical contact. There was no less intrusive means available to determine the identity of the occupants.[2]

Under all of the circumstances, then, including the risk to those officers still in the house and the very limited nature of the initial stop, that stop was both reasonable and supported by a founded suspicion. "[W]e need not look for a reconstructed, after-the-fact explanation of what may have been nothing more at the time of the occurrence than the instinctive reaction of one trained in the prevention of crime. . . . We cannot say that the circumstances of a car making inordinately slow progress along a street in the small hours of the morning could not reasonably have aroused the suspicions of a local officer alert to the unusual within his beat, and lead him to investigate." Wilson v. Porter, 361 F.2d at 415. *See* United States v. Jaime-Barrios, 494 F.2d 455, 458 (9 Cir. 1974).

The decision of the district court is reversed.

ZIRPOLI, District Judge (dissenting):

I respectfully dissent. The trial judge found that "the officers lacked sufficient specific and articulate facts to create a founded suspicion." (Emphasis added). Although I might have found differently had I been the trial judge, I may not now substitute my judgment for his and absent a showing of clear error, and I find none, such determination of the trial judge should be conclusive. I would affirm.

2. We note that under Oregon law, license and registration materials are required to be produced upon demand. *See* Oregon Rev.Stat. §§ 481.230(4) and 482.300(2).