STATE OF NEBRASKA, APPELLEE, v. FRED CANNON, APPELLANT.

174 N. W. 2d 181

Filed February 6, 1970. No. 37354.

Joseph R. Helmann, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

Fred Cannon was charged with breaking and entering the Phelps Liquor Store in Hastings, Nebraska, at approximately 11:20 p.m. on December 6, 1968. Trial to a jury was had and a verdict of guilty rendered pursuant to which judgment and sentence were pronounced against defendant. We affirm the judgment of the trial court.

The Phelps Liquor Store is located approximately 575 feet north and west of the Hitching Post Bar. The Phelps Liquor Store closed at about 10 p.m., but the manager and one other employee remained in the store to bring additional merchandise up from the basement and replenish the stock. The manager was on the first floor when he heard glass breaking. He walked toward

the area from which the sound came and observed that a large window about 6 feet high and 3 feet wide had been broken. A man was entering through the window. At this time the manager was about 20 feet from the broken window with a clear view of the intruder. Fifteen feet in from the window was a 160 watt fluorescent overhead light. He shouted at the intruder who was then standing sidewise in the window. The intruder turned his head and looked directly at the store manager. He then retreated from the window and ran away. The other store employee looked out through the window and saw the trespasser running down the street in the direction of the Hitching Post Bar. He did not see the individual enter the Hitching Post Bar as it was around the corner and out of view. A call was immediately made to the police. That call was received at 11:24 p.m. When the police arrived at the Phelps Liquor Store, the manager described the person attempting to gain entrance as being a medium-sized colored man with a bushy mustache, long sideburns, dark colored trousers and shirt, and a ¾-length light brown leather-like coat or jacket. Within the hour defendant was located and arrested at the Hitching Post Bar. At the time of his arrest, defendant had a shallow cut approximately 1 inch long under his left eye which was still bleeding. A bartender at the Hitching Post Bar saw the defendant in the bar and stated that when the police entered, the defendant got up and went into the back part of the room where his brother was playing pool. Another witness stated that he arrived at the Hitching Post Bar about 11:15 p.m. at which time the defendant was leaving the bar and that defendant returned sometime later, but the witness did not know at what time. At the time of his arrest, defendant was wearing a dark shirt, blue jeans, and a fawn-colored leather jacket. He had a mustache and was about 5 feet 10 inches in height.

The manager of the Phelps Liquor Store made an in-court identification of the defendant. No motion to

suppress this evidence was made either before or during the trial. It was not objected to and there was no motion to strike it. On cross-examination defendant brought out the fact that a short time after his arrest the defendant had been identified by this witness in the absence of counsel or a waiver thereof. Prior to the illegal line-up, he had viewed a picture of the defendant and four other colored men. The four other colored men were known to the witness. This was, therefore, in effect, a one-man line-up made the morning following the commission of the offense. The State introduced no evidence regarding prior identification.

Defendant's evidence sought to establish an alibi. Several relatives and acquaintances of defendant testified to his movements between 11 p.m. and 12 midnight on the night of December 6, indicating that he did not arrive at the Hitching Post Bar until after the commission of the offense and was at the time of the offense in the company of others. The various times attributed to defendant's movements during this period seemed to be somewhat indefinite or conflicting. The defendant himself took the stand and attempted to verify this defense, but on cross-examination admitted that in an earlier statement which he had given to the county attorney, he said that he had arrived there at a little after 10 p.m. Some of these witnesses also attempted to impeach identification of the defendant by stating that his mustache was not bushy and that his sideburns were not long. The evidence also disclosed that defendant was suffering from paralysis of one side of his face due to Bell's Palsy and indicated that when he attempted to talk, smile, or otherwise endeavor to use his facial muscles, his face would be pulled to one side in a noticeable manner. In rebuttal, the State called a physician who testified that defendant's facial condition would not be noticeable when his face was in repose.

In his brief and his oral argument, defendant challenges the validity of the State's evidence of identifica-

tion. This proposition was not raised either in his motion for new trial or in his assignments of error in this court and would not ordinarily be considered by this court under such circumstances. However, in view of the fact that a constitutional question has been raised, this defense will be considered. Defendant cites the case of United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149. See, also, Gilbert v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178; Stovall v. Denno, 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199. These cases lay down the rule that when a pre-trial line-up is had and defendant's counsel is not present, evidence of the line-up is inadmissible. In the present instance, no evidence of the line-up was introduced by the State, the only evidence pertaining thereto being brought out by defendant on cross-examination. These cases further hold that an in-court or subsequent identification will be barred if it is tainted by the preceding illegal identification. The Wade case further holds that evidence of an in-court identification will not be excluded "* * * without first giving the Government the opportunity to establish * * * that the in-court identifications were based upon observations of the suspect other than the lineup identification." In the present instance, no objection having been made to this evidence at or before the trial, the court had no opportunity to ascertain all the facts pertaining to the situation presented or to hear other evidence on the question of whether or not there was an independent basis for the in-court identification. Under such circumstances, several jurisdictions have held that the defendant waives any objection he may have to the admissibility of the identification evidence. See, Robbins v. State (Ind., 1969), 242 N. E. 2d 925; Thompson v. State, 6 Md. App. 50, 250 A. 2d 304; People v. Armstrong (Cal. App.), 74 Cal. Rptr. 37. In the case of Solomon v. United States, 408 F. 2d 1306 (D. C. Cir., 1969), the court failed to go quite so far and, indeed, failed to pass upon this question but

indicated that it was reluctant to consider such claims when first raised on appeal. In the case of People v. Cruz, 415 F. 2d 336 (9th Cir., 1969), it was held that: Where an evidentiary hearing is necessary for decision of a motion to suppress in-court identification, allegedly the tainted fruit of an illegal line-up, the district court may refuse to entertain such motion made after trial is underway if it is not satisfied that accused could not at an earlier stage have had adequate knowledge to make his claim.

It was further held that: Where defense counsel made no objection to witness' in-court identification despite fact that counsel himself elicited from previous witness statement that witness had identified defendant in a line-up and counsel presented no convincing reason why he could not have known of line-up, prior to trial, refusal to hold hearing, outside presence of jury and on motions during trial, on issue of whether in-court identification was tainted fruit of illegal line-up was not prejudicial.

It is apparent that in the present case, defendant and his counsel were aware at all times of the prior line-up. This is made evident by the cross-examination of the State's identification witness in regard to the line-up yet no motion for the suppression of the evidence was made before trial. This case is even more extreme than the cited case in that such motion or objection was not made during the trial and the question was not raised by assignment of error in defendant's motion for new trial or in his brief. While we believe this rule to be a proper one, especially in a case such as this, nevertheless, this case is not dependent upon the adoption of such a rule.

As previously noted, the Wade case indicates that evidence of an in-court identification may be properly received if it appears that it has a basis independent of the illegal line-up. This is supported by the case of Russell v. United States, 408 F. 2d 1280 (D. C. Cir., 1969).

In that case the court held that: Considerations bearing on actual reliability of an identification are relevant only to a determination of whether there was an "independent source" for an identification made at or after unnecessarily suggestive confrontation; even then, the question is not whether the identification was accurate in fact, but whether the witness was likely to make an accurate identification. In the case of United States v. Broadhead, 413 F. 2d 1351 (7th Cir., 1969), the court held that in-court identification evidence was admissible where such identification was made on a basis independent of a tainted line-up. This case also sets out the general procedure for determination of such questions by the trial court in the following words: "Where the prosecution intends to offer only an in-court identification, the defense may challenge its admissibility. The court should then, on facts elicited outside the presence of the jury, rule upon whether a pre-trial identification by the same eyewitness is violative of due process or the right to counsel. If a violation is found, the court should then decide whether the in-court identification is still admissible because it has an idependant (sic) source; indeed, it would appear in the interest of expeditious judicial administration for such a ruling to be made in any event. If the judge regards only the in-court identification as admissible, in the trial to the jury thereafter, the defense may, as a matter of trial tactics, decide to bring out the pre-trial confrontation itself, hoping that it can thus detract from the weight the jury might otherwise accord the in-court identification." It appears that the Wade and similar decisions are aimed at preventing the use of obviously unreliable identifications. Thus, where the facts make it evident that the witness has had a reasonable opportunity, at the time of the commission of the crime, to view the defendant whom he later identifies as the culprit, the evidence is generally considered to be sufficiently reliable to permit it to go to the jury on the basis that such

view constitutes an independent basis for identification. Such was the case here. The defendant was observed full face under a bright light from a distance of only 20 feet. The fact that the identifying witness did have an excellent opportunity to examine the defendant is made evident by the fact that he was able to give the police a sufficiently accurate description of the person he had observed so that the police were able to locate and identify him a short time later.

Defendant also challenges the sufficiency of the evidence of guilt. The evidence discloses that defendant was positively identified as a person caught in the commission of the offense charged. He was placed in the vicinity at the time by another witness and when arrested, within an hour after the offense, he had a fresh cut on his face which remains unexplained. There was sufficient evidence to justify submission of this case to the jury.

"In determining the sufficiency of the evidence to sustain the conviction in a criminal prosecution, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence.

"This court will not interfere with a verdict of guilty which is based on conflicting evidence unless the evidence is so lacking in probative force that it is insufficient as a matter of law to support a finding of guilt beyond a reasonable doubt." State v. Sheldon, 179 Neb. 377, 138 N. W. 2d 428.

Another point raised by defendant is the sufficiency of the evidence on the question of intent to steal. It is true that the defendant was interrupted and frightened away before he had an opportunity to make any move directly indicating his intent. It has long been the rule in Nebraska that intent being ordinarily hidden within the mind must be determined from all the facts and circumstances in evidence. In People v. Stewart, 113 Cal. App. 2d 687, 248 P. 2d 768, the court held that a burglari-

ous intent could be reasonably and justifiably inferred from the unlawful and forcible entry alone. In Ex Parte Seyfried, 74 Idaho 467, 264 P. 2d 685, it was held that: "Where a dwelling house is broken and entered in the nighttime and no lawful motive or purpose is shown or appears, or any satisfactory or reasonable explanation given for such breaking and entering, the presumption arises that the breaking and entering were accomplished with the intent to commit larceny." In State v. Whitaker (Mo., 1955), 275 S. W. 2d 316, the court stated: "The intent with which certain acts are done may be found, and frequently can only be found, from the attendant circumstances and must ordinarily be inferred from the facts. * * * If a person breaks and enters a house intending to steal, he is not exonerated from the commission of burglary merely because he did not steal anything or because he was frightened away before he carried out his intent." In State v. Woodruff, 208 Iowa 236, 225 N. W. 254, it was held that evidence showing an unexplained breaking and entering of a dwelling in the nighttime by the defendant was sufficient to require submission to the jury of the question whether such breaking and entering was with intent to commit larceny. It appears in the present case that the evidence regarding intent was also sufficient to present a jury question.

Defendant also asserts that the court's instructions on intent and on the purpose for which evidence of defendant's prior conviction of a felony can be considered were erroneous and prejudicial. Suffice it to say that both instructions set out rules which are well established in this jurisdiction.

The judgment of the district court is affirmed.

AFFIRMED.