**People of the State of Illinois, Plaintiff-Appellee, v. Andrew Gates and Eugene Gates, Defendants-Appellants.**

Gen. No. 53,226.

First District, Fourth Division.

March 31, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John R. McClory, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSES CHARGED

Armed robbery. Ill Rev Stats 1967, c 38, § 18–2.

Attempt (to commit the offense of rape). Ill Rev Stats 1967, c 38, § 8–4.

Aggravated battery. Ill Rev Stats 1967, c 38, §§ 12–4, 12–4(b) (1).

JUDGMENT

After a bench trial, defendants were found guilty of all charges and sentenced to 20 to 40 years (Andrew Gates) and 5 to 20 years (Eugene Gates) for armed robbery, 10 to 14 years (Andrew Gates) and 5 to 10 years (Eugene Gates) for attempt, and 9 to 10 years (Andrew Gates) and 5 to 10 years (Eugene Gates) for aggravated battery, all sentences to run concurrently.

POINTS RAISED ON APPEAL

1. Defendants' motion to suppress evidence was erroneously denied.

2. Defendants were denied the right to counsel during a showup held while the victim was in the hospital.

3. The display and marking of a knife for identification, when not connected with the crime and not offered into evidence, constituted prejudice.

4. Defendants were not proven guilty beyond a reasonable doubt.

5. Defendants were improperly convicted of several offenses arising from the same transaction.

EVIDENCE

Lottie Wozniak, for the State:

On September 24, 1967, at approximately 4:30 a. m., she got on a bus to take her to work at County Hospital. She got off the bus at Chicago Avenue at 5:00 a. m., ran up the street to catch another, missed it, and started to look for a cab. She saw a man, identified by her as defendant Andrew Gates, "walking all by himself" toward her. She "continued looking for a cab" and "got scared," so she started to go across the street but a car pulled up and blocked the way.

The witness "couldn't take a good look" at the driver, but she did get a good look at the passenger. At that point, Andrew "jumped up," grabbed and held her from the back, put a knife to her neck, and said, "Just shut up and keep walking." She offered to open her purse and give Andrew her wallet, but he told her to shut up. A man, identified by her as defendant Eugene Gates, ran up from the car and grabbed the purse.

Andrew told her to keep walking until they got to a parking lot next to the alley where he said, "lay down." He punched her in the ear and said, "on your back." As soon as she was down, he "unzipped himself and went on top of me. He monkeys around. When he's

52

through he got up." She then promised not to reveal this to anyone and asked to be let go, but he said no and punched her in the nose.

He made her get down again and was "doing the same thing" but this time "he's going with his hand under my brassiere and in my girdle." Andrew then asked for her rings, but she told him they were tight and wouldn't come off. She then heard the car and again asked to get up. Andrew said, "No, you're through," and jabbed the knife into her throat, causing the blood to come "swishing" out. She went straight to County Hospital where she spent two days, then went to another hospital for 12 days.

The streetlights were on the entire time and there was "plenty of light." She saw Eugene twice during the incident, once when he stopped the car to block her way, and again when he grabbed the purse. The whole occurrence took about twenty minutes.

About twelve days after the occurrence, while still in the hospital, she identified both defendants. She was brought into a room where she saw the defendants and two detectives.

John Baran, for the State:

He was a police detective and on September 24, 1967, was assigned to investigate an armed robbery. He first interviewed Lottie Wozniak. He also visited her in the hospital on September 28, showing her FBI photographs, and he returned on October 1 and 4 to show her more photographs.

He and his partner thereafter went to 450 North Sangamon and arrested defendants, who were then taken to Area 4 Robbery headquarters for about 15 minutes. He then took defendants to the hospital where the victim viewed them, and they were taken back to headquarters and charged.

John Baran, for the defense (previously called by the State):

He first spoke to the victim around 9:00 a. m. on the day of the occurrence, at which time "she only described the one offender very briefly." The description he eventually received of defendants was obtained from Mrs. Wozniak at the hospital by other police officers later the same day.

Sara Ann Phillip, for the defense:

Defendants are her brothers. About 7:00 p. m., on September 23,. Eugene arrived at the witness' house and remained until 5:00 or 6:00 p. m., Sunday evening, September 24. There was a party attended by about 10 or 11 persons. Five people, including Eugene and herself, stayed up all night playing cards, talking, and drinking beer. Eugene did not leave the house early that morning. Andrew arrived about the same time as Eugene, but left about 10:00 or 11:00 p. m. that same night.

It is not unusual for her to give this type of party. She "might have had a couple" in August, 1967, and didn't remember any other such party in September. She did "remember that particular night."

Larry Carson, for the defense:

He is 18 years old, and arrived along with Andrew at the party given by Sara Ann Phillip at 8:30 p. m. Andrew left about 11:00 or 11:30 p. m., but he [the witness] stayed all night with Eugene and Sara. Eugene did not leave that morning at 5:00 a. m.

Q. Z. Gates, for the defense:

She is the defendants' mother. On September 23, Andrew came home at 11:00 p. m. and went to bed at 12:00 p. m. When she got up at 3:00 a. m. and took a bath, she saw Andrew in bed. She again saw him in bed at 4:45 a. m. when she got up. Andrew didn't leave the house until noon, September 24.

Andrew Gates, in his own behalf:

He was at the party and left at 10:05 p. m. with George Burgle to take his girl friend home. He got home at 11:00 p. m., rested on the couch, and went to

54

bed about 12:15 a. m. He woke up at 8:30 a. m. and had not left the house at any time.

Eugene Gates, in his own behalf:

His testimony, in essential part, is the same as that of his sister, Sara. In addition, he testified that sometime after 3:30 a. m., on the morning in question, Sara was lying across the bed in the bedroom. He was watching television until 5:30 a. m. He denied seeing the victim on September 24, 1967.

OPINION

Defendants first contend that their motion to suppress the in-court identifications was improperly denied, in light of the fact that the prior confrontation between the victim and defendants was so prejudicial as to deprive defendants of due process of law, citing Stovall v. Denno, 388 US 293. Two Caucasian police officers, out of uniform, arrested defendants, who are Negro, and brought them to the hospital where the victim was spending her final day of hospitalization in recovering from her injuries. Mrs. Wozniak testified that she was escorted into the room where defendants were being held, and identified them as her assailants.

The court, in denying the motion at the close of the evidence, stated that the testimony had been received solely for the purpose of the motion and was not necessary evidence for the case in chief; that the in-court identification had an adequate, independent source. We believe the court's ruling was correct.

■ We have previously held that "it should make no difference whether an identification procedure is or is not unnecessarily suggestive so long as the record clearly shows a prior observation of defendant sufficient to serve as an independent origin for the in-court identification." People v. Cook, 113 Ill App2d 231, 239, 252 NE 2d 29. See, also, People v. Nelson, 40 Ill2d 146, 151, 238 NE2d 378; People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152; and People v. McMath, 104 Ill App2d

302, 312–313, 244 NE2d 330, affirmed, 40 Ill2d 388, 240 NE2d 593. Assuming, in the instant case, that the procedure of the hospital "showup" was unnecessarily suggestive (see Stovall, supra), the victim testified that at the scene of the crime, she had observed defendant Andrew Gates for 20 minutes under good lighting conditions, and, further, that she had observed defendant Eugene Gates for several minutes from a distance of a few feet under the same lighting conditions. There is no evidence in the record that the victim failed to identify defendants when given the opportunity to do so, nor that her testimony was shaken in any way, nor is there any conflicting identification testimony. We believe that the evidence is convincing that the courtroom identification had an independent origin arising from the witness' prior observation of defendants at the time of the crimes.

■ Defendants next contend that they were unfairly denied the right to counsel at the hospital "showup," relying on United States v. Wade, 388 US 218, and Gilbert v. California, 388 US 263. The Illinois Supreme Court has held that "these 'lineup' decisions apply only to post-indictment confrontations." People v. Palmer, 41 Ill2d 571, 572, 244 NE2d 173. The case at bar involves an identification procedure that took place prior to indictment which, under the Illinois interpretation, is not a "critical stage" of the proceedings, so the rule of Wade and Gilbert is inapplicable here.

■ The State marked a knife as an exhibit but did not attempt to place it in evidence or connect it to the crime. This conduct, defendants urge, constitutes patent prejudice, as it tends, unnecessarily, to inflame the trier of fact. As we have noted, this action was tried by the court without a jury. A judge is not as susceptible as a jury to prejudice which might arise from this sort of incident, particularly in a case such as this where the

56

exhibit was not admitted or offered into evidence. Under the circumstances of this case, with the victim's strong testimony concerning her having been wounded in the throat by a knife, coupled with her hospitalization therefor and her residual scar, the display of a knife in court was of little consequence, and does not constitute a sufficient ground for reversal.

██ Defendants also contend that the "overwhelming" alibi evidence offered in their behalf clearly outweighs the sole incriminating testimony of the victim so as to leave at least a reasonable doubt of their guilt. A careful perusal of the record illustrates some discrepancies in the testimony of the alibi witnesses, and does not, on its face, rule out the possibility that defendants could have committed the crimes. We will not disturb the trial court's determination of the credibility and weight to be accorded the testimony of an alibi witness unless it is "palpably erroneous." People v. Ostrand, 35 Ill2d 520, 532-533, 221 NE2d 499. Moreover, where identification of an accused is at issue, testimony of a sole witness is sufficient to convict, even though defendant has offered contradictions by way of alibi, provided the witness is credible and was able to make positive identification of the accused. See People v. Brinkley, 33 Ill2d 403, 211 NE2d 730. The instant identification testimony is consistent, strong and firm, in comparison with the alibi evidence. The testimony of Mrs. Wozniak is sufficient to establish the guilt of both defendants beyond a reasonable doubt.

██ Defendants lastly contend that they were improperly convicted of several offenses arising from the same transaction, citing People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299. We consider this to be without merit, as defendants' acts did not constitute one single transaction, but, rather, represented divisible conduct resulting in three separate offenses. The robbery was complete

■

before the rape was attempted, and that offense had been completed before the stabbing. While we recognize that the acts of defendants were not wholly unrelated, nevertheless, the three offenses, involving three different mental states, did not result from the same "conduct," as that term is defined and used in sections 2–4 and 1–7(m) of the Criminal Code (Ill Rev Stats 1967, c 38, §§ 2–4 and 1–7(m)). See People v. Baker, 114 Ill App2d 450, 453–457, 252 NE2d 693 and cases there cited.

The judgments of the Circuit Court are affirmed as to both defendants.

Affirmed.

DRUCKER and LEIGHTON, JJ., concur.