STATE OF NEBRASKA, APPELLEE, v. EUGENE PAUL OZIAH, APPELLANT.

184 N. W. 2d 725

Filed March 12, 1971. No. 37699.

John W. Carlson, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

The defendant was convicted on two counts of robbery and sentenced to 15 years in prison. The conviction and sentence were affirmed by this court. State v. Oziah, 182 Neb. 577, 156 N. W. 2d 31. Subsequently on August 20, 1969, defendant filed his amended motion to vacate and set aside the sentence and conviction, asserting he had been denied his constitutional rights which entitled him to release from his prison sentence. An evidentiary hearing was held and the trial court denied any relief. The defendant has appealed.

The evidence shows that defendant and two others entered the farm home of Mr. and Mrs. Arlin F. Blome near Clatonia, Nebraska, and confronted them with a gun and a knife while they ransacked the house and took money, guns, and jewelry belonging to them. After

tying up the Blomes, they left the farm. The Blomes reported the robbery to law enforcement officers who advised all officers by radio to be on the lookout for a 1958 Ford, very dirty, with a bent rear bumper, and occupied by three male occupants about 5 feet 10 inches in height, one wearing a beard. The police call stated they possibly had a knife and shotgun used in a robbery at Clatonia.

The police in Lincoln picked up the message and an hour or so later picked up a car answering the description and containing two men, one of whom wore a beard. The Lincoln police had no warrant. On request, Arlin Blome came to Lincoln and identified the automobile. He looked at the men at the police station through a one-way mirror and identified defendant as a participant in the robbery because "I got a good look at just the way his eyes and face features were and you can't help but recognize a man like that." Mrs. Blome also identified the defendant at the same time by the same procedure.

The defendant contends that the judgment and sentence are violative of his constitutional rights because the in-court identification by the Blomes was based, in part, upon an unlawful lineup which was tainted by the manner in which it was conducted and the unlawful arrest which preceded it.

While we are of the opinion that the Lincoln police arrest was lawful for the reason that the police call picked up by them was reliable information constituting probable cause, we choose to place the decision on other grounds. See, Bailey v. United States, 389 F. 2d 305 (1967); State v. Berkins, 2 Wash. App. 910, 471 P. 2d 131 (1970).

Assuming that the arrest of the defendant without a warrant was illegal and that the pretrial identification of defendant in the form of a lineup was unlawful, the in-court identification of the defendant by Mr. and Mrs. Blome was proper to be considered by the jury.

The evidence at the original trial showed that defendant and two confederates came to the door of the Blome home at about 7:50 p.m., on January 22, 1967, and sought entrance. When Mrs. Blome opened the door a gun was thrust in her face and the three intruders forced their entrance. They demanded money. Mrs. Blome was compelled to sit on a chair and kept there at gunpoint. Arlin Blome saw an automobile enter his yard with its lights out, which he described as a 1958 Ford, very dirty, with one side badly beat up, and with a damaged rear bumper that he portrayed as a "sagging bumper." He ran into his garage where he observed the car and three men. He waited a few minutes, then entered the house through the back door and was jumped and subdued by defendant and one of his companions. He was taken, with a knife at his neck, to the room where his wife was held and forced to sit in a corner. While one of the intruders covered the Blomes with a shotgun, the other two ransacked the house for money and other valuables. The intruders were in the house for 20 minutes or so. The house was fully lighted and the facial features of the three men were plainly visible. The Blomes closely scrutinized the three men and positively identified the defendant at the Lincoln police station and at the trial of the defendant. It is the contention of the defendant that the in-court identification was based in part upon an unlawful pretrial identification lineup and an unlawful arrest which preceded it which tainted and made inadmissible the in-court identifications.

In a very similar case, this court said: "Thus, where the facts make it evident that the witness has had a reasonable opportunity, at the time of the commission of the crime, to view the defendant whom he later identifies as the culprit, the evidence is generally considered to be sufficiently reliable to permit it to go to the jury on the basis that such view constitutes an independent basis for identification. Such was the case here. The

defendant was observed full face under a bright light from a distance of only 20 feet. The fact that the identfying witness did have an excellent opportunity to examine the defendant is made evident by the fact that he was able to give the police a sufficiently accurate description of the person he had observed so that the police were able to locate and identify him a short time later." State v. Cannon, 185 Neb. 149, 174 N. W. 2d 181.

The decisions of the Supreme Court of the United States hold that the issue before us is a constitutional one. The decisions of that court are therefore pertinent. In Silverthorne Lumber Co., Inc. v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319, 24 A. L. R. 1426 (1920), the court said: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, * * *." In Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), it was said: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" The foregoing is supported by United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149; and Gilbert v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178. In People v. Gates, 123 Ill. App. 2d 50, 259 N. E. 2d 631, the rule to be applied is well stated: "We have previously held that 'it should make no difference whether an identification procedure is or is not unnecessarily suggestive

so long as the record clearly shows a prior observation of defendant sufficient to serve as an independent origin for the in-court identification.' * * * Assuming, in the instant case, that the procedure of the hospital 'showup' was unnecessarily suggestive * * *, the victim testified that at the scene of the crime, she had observed Andrew Gates for 20 minutes under good lighting conditions * * *. There is no evidence in the record that the victim failed to identify defendants when given the opportunity to do so, nor that her testimony was shaken in any way, nor is there any conflicting identification testimony."

In the instant case, Arlin and Dorothy Blome each scrutinized the defendant and his companions for 20 minutes under good lighting conditions, at times within a distance of 5 feet. Both identified the defendant with absolute certainty within 4 or 5 hours at the Lincoln police station. Their evidence is neither disputed nor shaken. The identification of the defendant at the time of the commission of the crime is the original source of the identification where the Blomes had full opportunity to charge their minds with his identifying features. Whether or not the arrest was unlawful or the lineup illegal, the identifying evidence of the Blomes was properly admitted. It is not tainted within the meaning of the rule by an attempt to brace up an uncertain identification by the use of an illegal lineup. The taint of the illegal lineup, assuming it was illegal, was purged by the independent origin of the identifying evidence.

The brief of the defendant asserts that defendant's counsel on the original trial of this case was incompetent to such a degree as to warrant a retrial of the case. Although this issue was not raised in the motion for a new trial or the assignments of error in the brief on appeal in the instant case, there is no evidence that defendant's conviction was the result of incompetent counsel. State v. Konvalin, 181 Neb. 554, 149 N. W. 2d 755; State v. Moss, 182 Neb. 502, 155 N. W. 2d 435. The evidence is

quite conclusive that defendant committed the crime with which he was charged. Defendant's legal counsel is recognized as a capable lawyer in a large community. He protected the rights of the defendant with little in the way of proof of innocence or mitigation of punishment. An examination of the record reveals nothing to indicate that defendant did not have a fair and impartial trial or that his conviction was brought about by any failure of duty by his counsel. A defendant is entitled to a fair and impartial trial but not to a perfect one. We fail to see how a jury could have properly brought in any other verdict than the one it did.

The trial court was correct in denying any relief under the Post Conviction Act. The judgment is affirmed.

AFFIRMED.