**UNITED STATES ex rel. Andrew GATES, Petitioner,**

v.

**John TWOMEY, Warden, Respondent.**

**No. 70 C 3070.**

United States District Court,
N. D. Illinois, E. D.

April 29, 1971.

⚷ 339

Andrew Gates, pro se.

William J. Scott, Atty. Gen. of Ill., Warren K. Smoot, Asst. Atty. Gen., for respondent.

## MEMORANDUM OPINION

WILL, District Judge.

The petitioner, moving for habeas corpus relief, is presently incarcerated in the Illinois State Penitentiary, Joliet, Illinois, pursuant to convictions for the offenses of armed robbery, attempted rape, and aggravated battery. After a bench trial in the Circuit Court of Cook County, Illinois, the petitioner was found guilty and sentenced on January 31, 1968 to concurrent terms of twenty to forty years, ten to fourteen years, and nine to ten years.

The petitioner alleges as grounds for habeas corpus relief that (1) the State employed identification procedures so unnecessarily suggestive as to be conducive to mistaken identification in violation of the due process clause of the Fourteenth Amendment, (2) he was improperly denied the right to counsel during a pretrial show-up while the victim was in the hospital, and (3) he was improperly convicted of several offenses arising from the same transaction. These contentions were raised by petitioner in his direct appeal to the Illinois Appellate Court, which affirmed his conviction. People v. Gates, 123 Ill.App.2d 50, 259 N.E.2d 631 (1st Dist.1970). The Supreme Court of Illinois denied petitioner leave to appeal on October 6, 1970.

The respondent, in his return to the rule to show cause issued by this Court, originally stated that petitioner has failed to allege facts sufficient to justify habeas corpus relief. In a supplemental motion to dismiss, the respondent notes that petitioner has not filed any petition for post-conviction relief in the Circuit Court of Cook County, pursuant to Ill. Rev.Stat., Ch. 38, Section 122–1 et seq., thus suggesting that petitioner has failed to exhaust his state remedies as required by 28 U.S.C. Section 2254.

Our first line of inquiry, therefore, must be whether petitioner has satisfied the exhaustion requirement of Section 2254. If this requirement has not been met, the petition must be dismissed as premature, Petition of Barry, 388 F.2d 592 (3 Cir. 1968). It is no longer arguable that before a federal court may reach the merits of a habeas corpus petition, the petitioner must (1) have sought relief in each court of the state's hierarchy in which a remedy is currently available, Fay v. Noia, 372 U. S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and (2) show that precisely those points raised in the federal court were previously raised in the state courts or may no longer there be raised. See, e. g., Cotner v. Henry, 394 F.2d 873 (7 Cir. 1968), cert. denied, 393 U.S. 847, 89 S.Ct. 132, 21 L.Ed. 118; United States ex rel. Gonzales v. Follette, 414 F.2d 788 (2 Cir. 1969). As petitioner has attempted to seek direct review of his conviction in the Illinois Supreme Court, his only currently available state remedy is post-conviction relief. Because he has failed to seek such relief, this omission must be deemed a failure to exhaust his state remedies if, but only if, he could now raise those contentions which he urges herein in the post-conviction hearing.

The Illinois Post-Conviction Act, by its terms, appears to be an attempt upon the part of the Illinois Legislature to provide convicted criminal defendants with an opportunity to raise contentions of constitutional deprivations in a collateral attack upon their convictions even if such attack includes issues already raised on direct appeal. Notwithstanding the seemingly clear language of the Act, however, the Supreme Court of Illinois has held in repeated decisions construing the Act that a state prisoner may not collaterally attack his conviction in a post-conviction proceedings if the allegations he raises concerning a denial of his constitutional rights at trial were fully reviewed on direct appeal. The Illinois Supreme Court, thus, forecloses secondary collateral attacks upon a conviction by holding that the Illinois Post-Conviction Act is not intended to be used as a device to obtain another hearing upon a claim of denial of constitutional rights where there has already been an earlier full and final review of the issues raised in the post-conviction proceedings; any claim which has been given full review by the reviewing court is barred by *res judicata* principles. People v. Collins, 39 Ill.2d 286, 235 N.E. 2d 570 (1968); People v. Hill, 39 Ill. 2d 61, 233 N.E.2d 546 (1968); People v. Cox, 34 Ill.2d 66, 213 N.E.2d 524 (1966). These decisions each dealt with appeals from dismissed post-conviction petitions that had raised constitutional issues which had been disposed of by the Illinois Supreme Court in a previous direct appeal or on a writ of error. In these cases, the Supreme Court refused to re-hear the issues on the merits, applied the doctrine of *res judicata,* and affirmed the dismissals below of the post-conviction petitions.

If the Illinois courts confined the doctrine of *res judicata* to the situation wherein a post-conviction petitioner was denied relief only when he has had a prior review by the Supreme Court, the petitioner herein would not be barred from raising his constitutional claims in a post-conviction proceeding because he has had direct review on the merits only in the Appellate Court. The Supreme Court of Illinois, however, has recently expanded the doctrine of *res judicata* to apply to any post-conviction proceeding in which constitutional claims are raised which have previously been afforded direct review on appeal by either the Supreme Court or an Appellate Court. People v. Kamsler, 39 Ill.2d 73, 233 N.E.2d 415 (1968); People v. Bright, 42 Ill.2d 331, 247 N.E.2d 426 (1969); People v. Arnold, 45 Ill.2d 113, 256 N.E.2d 809 (1970).

In *Kamsler* and *Arnold,* the defendants were convicted in the Circuit Court, their convictions affirmed by the Appellate Court of Illinois, and the Supreme Court of Illinois denied their petitions for leave to appeal. In *Bright,* the defendant was convicted, the conviction was affirmed by the Appellate Court, but no petition for leave to appeal was ever filed with the Supreme Court. After finishing their direct appeals, the defendants filed post-conviction petitions and were denied hearings by the trial courts. The Supreme Court of Illinois held in each case that the claims adjudicated by the Appellate Court were *res judicata* and post-conviction proceedings could not thereafter be had. In *Kamsler,* the Court stated: "It is well settled that where a person convicted of a crime has taken an appeal from the judgment of conviction on a complete record, the judgment of the reviewing court is *res judicata* as to all issues actually decided by the court * * *" 233 N.E.2d at 416. In *Arnold,* the Court held that as the petitioner was simply attempting to argue, in somewhat altered form, the same questions originally presented to the trial court and reviewed by the Appellate Court, those issues had become *res judicata* and post-conviction relief would not lie. *See, also,* People v. Price, 44 Ill.2d 332, 255 N.E.2d 395 (1970); People v. Derengowski, 44 Ill. 2d 476, 256 N.E.2d 455 (1970); People v. Harrison, 46 Ill.2d 159, 263 N.E.2d 87 (1970); People v. Smith, 46 Ill.2d 430, 263 N.E.2d 860 (1970).

The petitioner herein is in the identical situation as the defendants were in *Kamsler* and *Arnold*. He has heretofore appealed his convictions to the Illinois Appellate Court, and has, in addition, petitioned for leave to appeal to the Illinois Supreme Court, which was denied, raising at trial and in both appeals those claims which he urges herein. Were we to require the petitioner to resort to state post-conviction proceedings, he could only expect the dismissal of that petition for relief in the Circuit Court and the affirmance of such dismissal on appeal to the Illinois Supreme Court under the doctrine of *res judicata* as enunciated in *Kamsler, Bright* and *Arnold*. We conclude, therefore, that petitioner does not have any effective state court processes presently open to him. Consequently, we conclude that he has exhausted his state remedies as that term is used in 28 U.S. C. § 2254.

By refusing to consider the theoretical availability of post-conviction relief as an effective state corrective process, we are doing nothing more than abiding by Section 2254's proper recognition of a "futility exception" to the general exhaustion requirement. Other courts have recognized that no useful purpose is served by requiring a state prisoner to go through the motions of what all concerned must acknowledge to be a futile gesture. For example, the Seventh Circuit, in a related context, has ruled that it is unnecessary to require a state prisoner to file a post-conviction petition when the highest court of the state has already ruled on an almost identical contention raised by the petitioner on direct appeal. United States ex rel. Kemp v. Pate, 359 F.2d 749 (7 Cir. 1966). Thus, the Court stated:

"The doctrine of exhaustion of state remedies demands only that the state courts first be presented with an opportunity to apply controlling legal principles to the facts bearing upon the constitutional claim of a defendant in a state criminal action before application is made to the federal courts." 359 F.2d at 751

Similarly, the Fourth Circuit, in granting a state prisoner habeas corpus relief, has ruled after reviewing the application of North Carolina law by North Carolina courts, that no useful purpose would be served in requiring the state prisoner involved to bring further state proceedings when the state courts had generally denied the validity of the petitioner's constitutional claims in other, non-related cases. Patton v. State of North Carolina, 381 F.2d 636 (4 Cir. 1967), cert. denied 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871. Likewise, the Sixth Circuit has concluded after reviewing state court application of Michigan law in a manner directly in opposition to the contentions of the habeas corpus petitioner, that the petitioner had exhausted his state remedies as far as Section 2254 was concerned. In Lucas v. People of the State of Michigan, 420 F.2d 259 (6 Cir. 1970), the Court stated:

"We see no reason to believe that the Michigan Appellate Courts are prepared to depart from the import and effect of (their prior decisions). It seems obvious that to require the appellees in the present case to exhaust their remedies in the State courts would be an exercise in futility. It appears more than probable that if this Court should relegate appellees to exhaustion of their State remedies, the appellate courts of Michigan would adhere to their previous interpretation of the State Constitution and appellees then would return to the federal courts for relief. Such a judicial run-around is not mandated by (28 U.S.C. § 2254) providing for exhaustion of State remedies. We agree with the District Court that under the circumstances of the case no effective State remedy exists." 420 F.2d at 262

Research indicates that the precise question presently before this Court has been ruled upon in another jurisdiction. In Coley v. Alvis, 381 F.2d 870 (6 Cir. 1967), the Sixth Circuit concluded that a restrictive reading by the Ohio Supreme Court of the Ohio statute providing for post-conviction relief rendered

that statute ineffective to protect the rights of the petitioner and refused to require a state prisoner to utilize that statute prior to applying for federal habeas corpus relief. The Ohio statute appeared by its terms to provide all convicted defendants with an opportunity to attack collaterally their conviction if such was alleged to be constitutionally deficient. The Supreme Court of Ohio, however, ruled that the doctrine of *res judicata* must be read into that statute. Like the Supreme Court of Illinois, the Supreme Court of Ohio thus refused to allow a state prisoner to litigate anew in his post-conviction proceedings, any claim raised on appeal. The Sixth Circuit concluded that the narrow limits placed by the Ohio courts upon the post-conviction statute resulted in leaving no effective State remedy open to the petitioner for him to exhaust. In commenting upon this decision in a subsequent and similar proceedings, Allen v. Perini, 424 F.2d 134 (6 Cir. 1970), the Court stated in effect that it strongly wished that it could conclude that the state post-conviction proceedings were not futile and that the prisoner must therefore file for such relief prior to seeking federal habeas corpus relief. The Court stated:

> "It would be highly desirable for Ohio prisoners to have all the relief available in the State courts of Ohio that is available by federal habeas corpus. The judges of this Court as well as the United States District Judges of Ohio would prefer that these issues be determined by the States courts, as contemplated in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770." 424 F.2d at 139

The Court acknowledged that although it would welcome the opportunity to hold that the state prisoner must seek post-conviction relief prior to coming to the federal courts, so long as the Ohio Supreme Court construed the involved post-conviction statute so narrowly, the Ohio federal courts would continue to consider such proceedings as ineffective to protect the rights of persons such as the petitioner and would continue to hold that an Ohio prisoner need not bring such state proceedings before being considered as having exhausted his state remedies. We fully agree with the conclusions of the Sixth Circuit in the above two cases.

This Court is not unmindful of the potential for the Supreme Court of Illinois to relax the doctrine of *res judicata* in post-conviction proceedings as to issues actually raised on direct appeal when fundamental fairness so requires. However, our research indicates no more than one instance of such relaxation in the last decade and a half as to issues actually raised and decided on appeal. In People v. Keagle, 37 Ill.2d 96, 224 N.E.2d 834 (1967), the Supreme Court considered on appeal from the dismissal of a post-conviction petition a contention which it had ruled upon at the petitioner's direct appeal. The Court, however, deemed the contention to be highly technical and to have been inadequately presented in a pro se brief on the direct appeal. Although the Court stated that it has concluded in numerous post-conviction cases that the doctrine of *res judicata* cannot be mechanically applied, the cases which it cited as examples were almost fifteen years old at that time and had been ignored completely in the interim by the Illinois courts in cases dealing with issues actually raised on direct appeal.

The singularity of *Keagle* is further exemplified by the fact that in no subsequent decision has the Court so relaxed the rule of *res judicata* as to issues actually raised and decided on direct appeal. In distinguishing *Keagle* from the ordinary case, the Supreme Court of Illinois has described it thusly:

> "In Keagle, we considered petitioner's claim because it presented a constitutional problem relating 'to the fundamental fairness of the defendant's second trial * * *' The contention there was 'highly technical * * * (and) unrelated to guilt or innocence * * * (and on his prior appeal) the claim was inadequately presented * *

by the defendant whose brief was, ostensibly at least filed pro se.'" People v. Weaver, 45 Ill.2d 136, 256 N.E.2d 816, 818 (1970)

The Illinois Supreme Court, thus, has strongly indicated how atypical it considers *Keagle* to be.

Although other Illinois decisions appear which relax the general rules of *res judicata,* they are completely inapposite to the present situation. In cases such as People v. Polansky, 39 Ill.2d 84, 233 N.E.2d 374 (1968), and People v. Slaughter, 39 Ill.2d 278, 235 N.E.2d 566 (1968), the Supreme Court appeared to relax the doctrine where the trial court failed to appoint counsel to assist the defendant on his first post-conviction petition. These cases, however, dealt with the doctrine as it relates to findings made at a first post-conviction proceedings being binding upon any subsequent post-conviction hearing where the first proceedings was deemed tainted because of a lack of counsel. These cases did not deal with the effect of findings made during direct review of a conviction upon post-conviction proceedings.

Also inapposite are cases such as People v. Williams, 36 Ill.2d 194, 222 N.E.2d 321 (1966), cert. denied, 388 U.S. 923, 87 S.Ct. 2126, 18 L.Ed.2d 1372, where the doctrine of *res judicata* might be considered to have been somewhat weakened by the Illinois Supreme Court, but only because recent United States Supreme Court decisions might have had a drastic effect on petitioner's original trial. We agree that if, subsequent to a state prisoner's conviction and/or appeal, the United States Supreme Court drastically changes the governing rules of constitutional law, the State courts should be the first courts to be given an opportunity to rule upon the prisoner's claims in light of the new law. Blair v. People of the State of California, 340 F.2d 741, 744 (9 Cir. 1965). However, the possibility that Illinois courts would not strictly apply the doctrine of *res judicata* in circumstances where the controlling principles of law have significantly changed has no bearing upon the present petition where such unusual circumstances do not exist. We have no choice but to conclude that the doctrine announced by the Illinois Supreme Court in *Keagle* regarding the non-mechanical application of the rules of *res judicata* was intended to be and has in fact been limited to the most exceptional and unusual circumstances where the original ruling was "tainted" for one reason or another. Because we have no such exceptional circumstances in this case, it is obviously very unlikely that the Illinois courts would not apply the doctrine of *res judicata* and not bar the petitioner herein from raising his claims in a state post-conviction proceeding.

Because we conclude that, under Illinois law, the Illinois courts would apply the doctrine of *res judicata* as to issues actually raised by the petitioner on his direct appeal, cases such as United States ex rel. Millner v. Pate, 425 F.2d 249 (7 Cir. 1970) are inapplicable. In that case, the habeas corpus petitioner's state conviction had been affirmed by the Illinois Appellate Court. In raising claims in the federal court not raised on appeal, the petitioner contended that the Illinois doctrine of waiver rendered his potential post-conviction hearing ineffective to protect his rights. That doctrine as announced by the Illinois courts is that, generally, any claim which could have been, but which was not, raised on direct appeal is waived and may not be raised in a subsequent post-conviction proceedings. The Seventh Circuit in *Millner* disagreed and concluded that Illinois courts do occasionally relax the waiver rule and that the facts of Millner's petition arguably might fall within the waiver relaxation rule. The Court held that Millner should be required to first present this claim to the Illinois courts under the Post-Conviction Act. They thus concluded that he failed to exhaust his state remedies.

*Millner,* and other Seventh Circuit cases dealing with Illinois prisoners, such as United States ex rel. Waldron v. Pate, 380 F.2d 94 (7 Cir. 1967) and United States ex rel. Calhoun v. Pate,

341 F.2d 885 (7 Cir. 1965), are clearly distinguishable from the present petition for two reasons. As discussed above, *Millner,* the latest Seventh Circuit case regarding Illinois prisoners and post-conviction remedies, specifically concluded that the petitioner's claims therein could possibly fall under an exception to the general rule of waiver applied by the Illinois courts and that those courts, therefore, should be given the first opportunity to reach the involved issues. In the instant case, it is manifest that the petitioner's claims do not fall within any stated exception to the general rule of the Illinois courts precluding relitigation in post-conviction proceedings of issues actually raised on appeal.

The other characteristic of this litigation which distinguishes it from the Seventh Circuit cases dealing with the Illinois law of waiver of claims never raised on appeal is that we are in fact dealing here with issues presented to and ruled upon by Illinois courts. In the waiver situation, it is understandable that federal courts should be reluctant to rule upon claims never heard or considered by a state reviewing court. The whole doctrine of comity of 28 U.S.C. § 2254 embodies a desire to allow the States to be provided with the first opportunity to rule upon constitutional claims of state prisoners, prior to federal court intervention. As to claims never raised on review, therefore, a federal court is fully justified in hoping that the state courts may consider the asserted constitutional claims. But in the case of claims actually raised in and disposed of by the state courts on direct appeal, the need to have the state once again rule upon the claims is considerably less urgent than in the waiver situation. Where, as here, the likelihood that the state courts will even listen to the asserted claims is nil, no useful purpose is to be served by forcing the prisoner to file more papers in the state court system.

Our conclusion that the petitioner herein does not have any effective state remedy available to him does not signify that we relish reaching this determination. As the Sixth Circuit stated in Allen v. Perini, *supra,* in relation to the Ohio Supreme Court's exceedingly narrow interpretation of the Ohio post-conviction relief statute, we wish that Illinois prisoners would have available to them in Illinois state courts all the relief available to them in Illinois federal courts, including the allowance of secondary collateral attack upon their convictions, particularly when, as here, the Illinois Supreme Court has declined to review the lower appellate court decision.

The advantage that would accrue to the state by allowing a secondary and collateral attack upon the conviction is that the federal courts would be precluded from entertaining habeas corpus petitions from state prisoners who allege that they were deprived of their constitutional rights in their state criminal trials until after the highest court of the state has ruled upon these contentions. The entire spirit of Section 2254 of Title 28 of the United States Code is one of comity that provides the state courts with a full and fair opportunity to hear the claimed constitutional deprivation prior to the intrusion of the federal judiciary into state matters. Section 2254 was enacted to codify the judicially evolved rule of exhaustion, particularly as formulated in Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L. Ed. 572 (1944). (For a review of the legislative history of this statute, see Darr v. Burford, 339 U.S. 200, 211–213, 70 S.Ct. 587, 94 L.Ed. 761 (1950)). This section was clearly designed "as a rule ordering the state and federal proceedings so as to eliminate unnecessary federal-state frictions." Fay v. Noia, 372 U.S. at 435, 83 S.Ct. 847. Thus, by allowing collateral attack through post-conviction proceedings, even when the contentions in that attack were already raised on appeal to and ruled upon by a lower state appellate court, the state insures that a federal court does not intervene in the matter on the merits until after the Illinois Supreme Court has

finished its action upon these contentions. If, as it now appears to be, collateral attack is not allowed and the Illinois Supreme Court has denied leave to appeal, a state prisoner has exhausted all his state remedies for federal habeas corpus purposes prior to any substantive decision on these claims by the highest court of the state.

Notwithstanding the apparent advantages that would accrue to the State, to the orderly administration of justice, and to the entire federal-state relationship through allowing a state prisoner collaterally to attack his conviction and the seemingly clear language of the Illinois Post-Conviction Act, the Illinois Supreme Court has ruled that it will not allow such collateral attack as to issues presented to and ruled upon in a direct review of the conviction, even if that review was only at the level of an Appellate Court.

The effect of the present Illinois *res judicata* rule is either to require a prisoner to go through a procedure which is meaningless and a clear run-around or, unless the federal writ of habeas corpus is to be abrogated, to shift to the federal courts the responsibility for considering alleged unconstitutional state convictions before the highest state court has considered them, a result which is undesirable either in the interests of comity or sound judicial administration.

In the instant case, for example, if we dismiss petitioner's petition as premature for failure to exhaust theoretically available state remedies, he could file in this Court a notice of appeal and a motion for a certificate of probable cause. If this were denied and the denial affirmed by our Court of Appeals, he would then no doubt follow our admonition and file a petition for post-conviction relief in the state Circuit Court. If this were denied on grounds of *res judicata*, he could appeal as of right to the Illinois Supreme Court, the very Court that has evolved the strict application of the *res judicata* principle to post-conviction petitions. If the dismissal is affirmed on the ground of *res judicata*, as it undoubtedly would

be, the petitioner would be back in this Court once again a year or two hence *with the identical petition that is presently pending.*

This formalistic exercise cannot conceivably be considered an efficient or rational utilization of limited court resources, at both the federal and state levels, or an effective disposition of alleged constitutional violations. The doctrine of comity will not be derogated by acknowledging the reality of petitioner's situation. It is the State court system that has told petitioner that he has exhausted his state remedies. We conclude for the reasons outlined above that petitioner does not have an effective available state court remedy and that he has exhausted his state remedies as required by Section 2254 of Title 28 of the United States Code. We move, therefore, to a consideration of petitioner's claims upon the merits.

As to petitioner's first claim that the State employed identification procedures so unnecessarily suggestive as to be conducive to mistaken identification in violation of the due process clause of the Fourteenth Amendment, we must look both at an out-of-court identification that occurred some twelve days after the alleged occurrences while the complaining witness was in the hospital and at that witness' subsequent in-court identification of the petitioner.

An in-court identification of a defendant in a criminal trial is admissible if it has an origin independent of an improper pretrial identification. United States v. Wade, 388 U.S. 218, 241–242, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 272–273, 87 S. Ct. 1951, 18 L.Ed.2d 1178 (1967). A *claim that an in-court identification is* of independent origin, and thus not so unduly prejudicial as to taint a conviction, in each case, must be evaluated in light of the totality of surrounding circumstances. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

The Supreme Court in *Wade* suggested that courts should consider, in making a determination of whether an in-court identification has an origin independent of the tainted procedure, "* * * the prior opportunity (of the witness) to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." *Wade* at 388 U.S. 241, 87 S.Ct. 1940.

■ In the instant case, Mrs. Wozniak, the victim of the crimes who made the in-court identification at petitioner's trial, also identified petitioner in her hospital room as the one who committed the crime. The trial court refused to grant the petitioner's motion to suppress Mrs. Wozniak's in-court identification of the petitioner.

After a careful reading of the transcript of petitioner's trial, the following facts emerge. Mrs. Wozniak confidently and unwaveringly testified that she had carefully observed the petitioner at the scene for approximately twenty minutes (R. p. 15 *), under good lighting, the street lighting being lit adequately at the scene. (R. p. 17), Mrs. Wozniak also observed the petitioner face to face when he initially passed by her on the street (R. p. 8) and then again when he came back to rob and assault her. (R. p. 10). And during the course of the attempted rape, Mrs. Wozniak was face up and able to observe the petitioner while he attempted to rape her twice. (R. pp. 13–14). Petitioner was not wearing anything to conceal his identity or cover his face. Mrs. Wozniak at no time identified any other person as the one who committed the acts against her, nor did she give a description of petitioner which was inconsistent with petitioner's actual physiology. Mrs. Wozniak positively identified the petitioner on every occasion and less than two weeks elapsed from the time of the crime and the time Mrs. Wozniak first identified the petitioner. (R. pp. 46–47).

Based upon the above facts, the trial court believed that the in-court identification had an origin independent of the show-up in the hospital and was thus admissible into evidence. The trial judge meticulously outlined his understanding of the then recent Supreme Court decisions in this area and carefully applied the tests of *Wade* to the circumstances of the case. (R. pp. 152–156). The Appellate Court agreed with the trial court when it made an independent determination from the record of the independence of the in-court identification. We fully agree with both those courts that the evidence justified the holdings that the in-court identification had an origin independent of the presumed tainted hospital confrontation and arose from the witness' prior observation of the petitioner at the time of the crimes. We conclude, therefore, that the admission of the in-court identification into evidence at the criminal trial did not deprive petitioner of his Sixth and Fourteenth Amendment rights under *Wade* and/or *Gilbert.*

■ As to petitioner's contention that he was unfairly deprived of the right to counsel during the show-up while the victim was in the hospital and that the testimony surrounding the hospital identification was erroneously admitted at his state trial, we will presume, without deciding, that a pre-indictment line-up is a critical state of the proceeding at which counsel is required (*Wade* and *Gilbert* both dealt with post-indictment line-ups where counsel had already been appointed) and that the show-up in question was in fact unduly suggestive. Notwithstanding these presumptions, we conclude that petitioner's conviction was not constitutionally tainted.

In order for the judge in this bench trial to rule intelligently upon petitioner's motion to suppress the identification

* "R." refers to the transcribed record of petitioner's trial.

testimony, the trial judge as the trier of fact first had to hear all the testimony involving the hospital identification for purposes of determining whether the hospital identification rendered the in-court identification highly suspect and therefore inadmissible. No question exists that the trial judge was aware of the proper posture of the evidence for he stated: "I would point out in this particular matter that the testimony of the hospital identification was only admitted for the purpose of the motion (to suppress identification testimony). It is not necessary for the trial court to consider. The Court believe(s) the court room identification had an independent source, but in any event such testimony of hospital identification would merely be harmless error, since the Court well knows in what context the evidence was received." As the trial court indicated that it was not considering the evidence other than for ruling on the motion, we conclude that, even assuming that the show-up was unduly suggestive and that petitioner was denied his right to counsel, no constitutional deprivation thereby accrued to petitioner. In any event, we agree with the trial judge's observation that the testimony of the hospital identification, even if admitted for the wrong purpose, was harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), in that the overwhelming weight of the evidence against the petitioner primarily came at the trial from the in-court identification, which we have agreed had origins independent of the hospital show-up. We come to this conclusion even more quickly than we otherwise might because of the trial judge's careful analysis quoted above.

The petitioner's final contention is that he was denied due process of law in that the State imposed multiple sentences upon him for alleged offenses arising out of the same transaction. No doubt exists that the Fifth Amendment, applicable upon the states, Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), protects against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In the instant case, however, it is manifest that petitioner's acts did not constitute one single transaction, but rather, was divisible conduct resulting in three separate offenses. The robbery was complete before the rape was attempted, and that offense had been completed prior to the stabbing. (R. pp. 11, 13, 15). Although the criminal acts were closely associated in time, the three offenses involved three different mental states and three different physical activities, and, consequently, did not result from the same conduct. Petitioner was not given multiple punishments for the same acts and thus does not state any constitutional claim.

We conclude that petitioner has failed to allege facts sufficient to justify habeas corpus relief and therefore deny his petition. An order dismissing petitioner's petition for habeas corpus relief shall enter.